[No. 9451.   In Bank. — December 18, 1886.]

LAFAYETTE I. FISH ET AL., RESPONDENTS, *v.* HENRY A. BENSON ET AL., APPELLANTS.

APPEAL — NEW TRIAL — IRREGULARITIES PRIOR TO ORDER — DISMISSAL. — An appeal from an order granting or refusing a new trial is a matter of right, and if the proceedings on the motion, anterior to the order, are irregular or defective, such irregularity or defect is not a cause for dismissing the appeal, but may, upon a proper showing, be passed upon in determining the same.

ID. — AFFIDAVITS ON MOTION — IDENTIFICATION OF. — On an appeal from an order refusing a new trial, affidavits embodied in the record, and marked as filed by the clerk, will not be considered, unless they are contained in and form part of the bill of exceptions or statement, or are otherwise identified by the judge as having been used on the motion.

ID. — REFERENCE TO AFFIDAVITS IN ORDER — INSUFFICIENT IDENTIFICATION. — A reference in the order refusing the new trial to the affidavits of certain specified persons is not a sufficient identification of the affidavits used on the motion, although affidavits purporting to be those of the persons specified are embodied in the transcript.

EJECTMENT — CROSS-COMPLAINT SETTING UP EQUITABLE DEFENSE — DEFENDANT NOT ENTITLED TO JURY TRIAL. — The action was brought to recover the possession of certain land to which the plaintiffs claim title under a conveyance from one of the defendants to their immediate grantor. The defendants filed a cross-complaint, alleging in substance that the conveyance was obtained by means of fraud and undue influence, and that the plaintiffs became purchasers with notice thereof. The prayer of the cross-complaint was that the conveyance under which the plaintiffs claim be canceled, and that they be compelled to reconvey. *Held,* that the cause of action stated in the cross-complaint was equitable in its nature, and that the defendants were not entitled to a jury trial as to the issues so raised.

ID. — FRAUD — PARTIES WHEN ENTITLED TO JURY IN CASES OF. — Both courts of law and of equity, in proper cases, have jurisdiction of matters of fraud; and when the facts constituting the fraud and the relief sought are such as are cognizable in a court of law, the parties are entitled to a jury trial; but where the case, as made by the pleadings, involves the application of the doctrines of equity, and the granting of relief which can be obtained only in a court of equity, the parties are not entitled to a jury trial.

EJECTMENT — UNLAWFUL DETAINER — JUDGMENT ROLL NOT EVIDENCE OF TITLE. — A judgment roll in an action of unlawful detainer is not evidence of title to the demanded premises, and is inadmissible for such purpose in an action of ejectment between the same parties.

BONA FIDE PURCHASERS — FINDINGS — EVIDENCE. — The court found that the plaintiffs were *bona fide* purchasers of the demanded premises for a valuable consideration, without notice of the fraud of their grantor, and without such knowledge as would reasonably put them upon inquiry. *Held,* that the finding was sustained by the evidence.

ID. — INADEQUACY OF PRICE — NOTICE OF FRAUD. — The court further found that the land in controversy with the title assured would be worth thirty thousand dollars, but that, by reason of pending litigation, the interest of the defendant in the land, at the time of the conveyance, would not have sold for what the land itself with a clear title was worth; that in fact the land had no market value, but might reasonably represent, so far as the transactions involved in this case are concerned, a purchasing power equivalent to eighteen thousand dollars. The plaintiffs purchased the land from the grantee of the defendant for nine thousand dollars. *Held,* that the price was not so inadequate as to charge the plaintiffs with notice of the fraud of their grantor.

Id. — Fraudulent Conveyance — Title Passes to Grantee — Subsequent Conveyance to Bona Fide Purchaser. — Where a grantor who is mentally competent is induced to execute and deliver a deed through the fraudulent devices of the grantee, the conveyance is not void, but merely voidable, and vests the title in the grantee, subject to be divested by a rescission of the sale; but a subsequent conveyance by the grantee to a *bona fide* purchaser for a valuable consideration and without notice passes the title freed from any of the equities between the original parties.

Id. — Contract of Sale — Notice of Conditions Precedent — Delivery of Deed. — Prior to the execution of the alleged fraudulent deed, the defendant entered into a contract for the sale of the land to the grantor of the plaintiffs upon the performance by him of certain conditions precedent to the delivery of the deed. The contract, which was duly recorded, provided that when the deed was delivered the sale should be fully completed, and neither party should have any claim upon the other. Thereafter the defendant was induced by the fraud of the plaintiff's grantor to deliver the deed before the performance of the conditions precedent. *Held,* that the contract of sale was not notice to the plaintiffs of the non-performance of the conditions precedent by their grantor.

Id. — Findings — Admissions of Pleadings. — Certain findings stated in the opinion, *held,* not to be contrary to admissions in the pleadings.

Appeal from a judgment of the Superior Court of Contra Costa County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Flournoy, Mhoon & Flournoy, E. P. Cole, Mill & Jones,* and *F. P. Deering,* for Appellants.

*A. L. Rhodes, Aylett R. Cotton, W. H. H. Hart, B. S. Brooks,* and *Eli R. Chase,* for Respondents.

Searls, C. — This is an action of ejectment to recover certain premises situate in Contra Costa County.

Plaintiffs had judgment, from which, and from an order denying a new trial, the defendants appeal.

Respondents move to dismiss the appeal, so far as it relates to the order denying a new trial.

The appeal was taken within the sixty days provided by statute therefor after entry of the order denying the new trial.

If the notice of the motion was not given, or the bill

of exceptions not filed in time, and this is made to properly appear in the record, the fact may constitute a reason for affirming the order denying the new trial, but is no ground for dismissing the appeal from the order.

In other words, an appeal is given as matter of right from an order granting or denying a new trial. If the proceedings on the motion anterior to the order are irregular or defective, such irregularity or defect is not cause for dismissing the appeal, but may, upon a proper showing, be passed upon in determining the same.

In the view we have taken, it may be conceded to the appellants that the proceedings on motion for new trial were had in time, and that the bill of exceptions is properly before us.

To the consideration of the affidavits found in the record, objection is made by respondents upon the ground that they are not identified as having been used on the motion for a new trial.

These affidavits are marked as filed by the clerk of the court in which the action is pending, but are not contained in and form no part of the bill of exceptions and statement certified by the judge, and are not identified by him in any way as having been used on the motion, unless a reference in the order denying a new trial to the affidavits of certain persons in such order named, whose names are appended to some of the affidavits in the record, can be deemed to identify them or a portion of them.

In *Johnson* v. *Muir*, 43 Cal. 542, the court, in referring to affidavits on motion for a new trial, said: —

" But in such a case it is required that the affidavits should be identified by the indorsement of the judge or clerk, made at the time of hearing, that they were read or referred to on the hearing.

" It is evident that a mere ordinary indorsement of filing is not sufficient to identify the papers as having been used upon the hearing of the motion. They may

have been deposited with the clerk for other and quite different purposes."

In *Pieper* v. *Centinela L. Co.*, 56 Cal. 173, it was held that papers used upon a motion in the court below, and certified by the judge as having been so used, were ·properly authenticated.

In *Walsh* v. *Hutchins*, 60 Cal. 228, papers appeared in the transcript as printed, purporting to be an affidavit of defendant, and a counter-affidavit of the plaintiff; but not embodied in a bill of exceptions, and not certified or identified by the judge who heard the motion as having been used on such motion; and although certified by the clerk as true and correct copies of the papers used on the hearing of the motion, this court held that " it is not for the clerk to determine what papers or evidence the court acted upon," and discarded the affidavits.

In *Nash* v. *Harris*, 57 Cal. 242, this court said: " We cannot indulge in presumptions of papers which were used in the court below on the hearing of a motion. To be considered, they must be made a part of the record of the case by a bill of exceptions, or be authenticated by the judge who tried the case, in such a way as to leave no doubt, when found in the transcript, that they are the papers which were before him when he acted, and upon which he decided. Unauthenticated papers in a transcript, in which there is no bill of exceptions, constitute no part of a record which can be considered upon appeal."

Tested by the rules thus established by this court for the verification of its record, the affidavits, copies of which are contained in the transcript, but not in any way authenticated or identified as having been used on the motion for a new trial, constitute no part of the record which can be considered on this appeal.

If it be urged that the court below, in its order overruling the motion, referred to the affidavits of A, B, and

C, that there is found in the record affidavits of A, B, and C, and therefore as to such affidavits the identification is sufficient, the response must be *non constat* that the affidavits found in the transcript are those referred to in the order. The court or judge, not having designated those in the transcript as having been used on the motion, to presume from the evidence afforded that they were in fact used on the motion, would lead to a loose system under which abuses would be most certain to occur.

The practice under which the judge who heard a motion certifies to a bill of exceptions or statement containing the papers used at the hearing, or identifies the papers considered on the hearing in such manner as to leave no doubt of the fact of their having been so used, is simple and efficacious, and cannot with safety be departed from.

We are therefore of opinion that none of the affidavits set out in the transcript as a foundation, or in support of the motion for new trial, can be considered on this appeal.

This view disposes of so much of the motion for a new trial as is based upon accident and surprise, and newly discovered evidence.

We say disposes of that branch of the motion for the reason that the record, aside from the affidavits, affords no sufficient showing to warrant a new trial on such grounds.

Defendant's right to a trial by jury.

The action as hereinbefore stated is ejectment.

Defendants filed a cross-complaint, in which they show in substance that defendant, H. A. Benson, in 1881, was seised in fee of the demanded premises, then worth fifty thousand dollars, and certain personal property worth six thousand dollars; that he was sixty-three years of age, and in consequence of sickness and trouble had become weak, debilitated, and deranged, all of which facts being well known to J. C. Beatty, C. F. Jones, and J. C.

Fisk, who, with a view and intent to defraud him, wrongfully combined and conspired to mislead and cheat him, induced him to sell and convey his property to Jones, and to receive in payment therefor certain Texas land warrants, represented to be of great value, though in fact of trifling value. Numerous other fraudulent acts, on the part of Jones, Beatty, and Fisk are set out in apt language, whereby Benson was imposed upon, cheated, and defrauded in the transaction; avers an offer to return the land warrants, and a demand of a reconveyance of the property, and prays that it may be adjudged and decreed that Jones, Beatty, and Fisk were guilty of fraud and undue influence in the purchase of the property; that plaintiffs became purchasers with notice of such fraud; and that the conveyances from Benson to Jones, and by said Jones to the plaintiffs, Fish and Blum, be canceled and annulled, and that Benson be reinvested with the real property, and that the plaintiffs be compelled to reconvey to him the demanded premises, and that if they refuse so to do, commissioners be appointed by the court to make, execute, and deliver such reconveyance.

The cross-complaint states facts which, if true, constitute a cause of action of which a court of equity has jurisdiction, and the relief sought is such as can only be obtained in equity.

It was entirely distinct from the action of ejectment, and if successful, would result in divesting the plaintiffs of their legal title.

Being an action cognizable in equity and distinct from the legal action, it was the duty of the court below to first determine the issues involved under the cross-complaint, for the reason that if the defendants succeeded on these issues it would defeat the right of plaintiffs to recover in their action at law, however perfect their legal right. (*Lestrade* v. *Barthe*, 19 Cal. 660; *Weber* v. *Marshall*, 19 Cal. 447.)

The fact that the cross-complaint charged fraud did not entitle defendants to a jury trial.

Both courts of law and of equity in proper cases have jurisdiction in cases of fraud, and when the facts constituting the fraud and the relief sought are such as are cognizable in a court of law, the parties are entitled to a jury trial; but where the case as made by the pleadings involves the application of the doctrines of equity and the granting of relief, which can be obtained in a court of equity, and not elsewhere, the parties are not entitled to a jury trial. (*La Societe Francaise* v. *Selheimer,* 57 Cal. 623; *Jones* v. *Gardner,* 57 Cal. 641; *Lorenz* v. *Jacobs,* 59 Cal. 262; *McLaughlin* v. *Del Re,* 64 Cal. 472; *Cahoon* v. *Levy,* 5 Cal. 294; *Koppikus* v. *State Capitol Commissioners,* 16 Cal. 248.)

The court did not, therefore, err in separating the two causes of action and trying the issues under the cross-complaint without the interposition of a jury, except as to the three special issues, which were submitted to and tried by a jury, and as the court might have tried all of these issues, it follows there was no error in refusing to submit the sixteen additional issues to the jury, as requested by counsel for defendants.

A jury trial was not denied by the court upon the issues made on the common-law side of the case, but was expressly waived by the parties, and the case on those issues was submitted to the court upon the testimony previously taken upon the trial of the equitable action.

At the trial, defendants offered in evidence a judgment roll in the case of *Fish et al.* v. *Benson et al.* (No. 236), to the introduction of which plaintiffs objected, and their objection was sustained by the court. To this ruling an exception was taken, and the action of the court assigned as error.

The judgment roll in question is the record of an action of unlawful detainer instituted September 12,

1881, by Fish, Blum, and Stovell, who are plaintiffs in this action, as plaintiffs, against I. J. Truman, Henry Johnston, Henry A. Benson, and Emeline Benson as defendants.

The complaint avers that on the fifth day of May, 1881, C. J. Jones, the grantor of plaintiffs, leased and demised the demanded premises to I. J. Truman for a term which expired September 1, 1881; that said Truman entered into possession under the lease; that the other defendants are subtenants under Truman; that the lease has expired; and that defendants refuse to yield up possession to plaintiffs, although duly notified so to do, and demands possession with treble damages.

A demurrer was interposed to the complaint, which was sustained under the doctrine of *Martin* v. *Splivalo,* 56 Cal. 128, upon the ground that no sufficient notice to defendants was averred, whereupon the complaint was amended.

Defendants Benson and wife answered denying the leasing of the premises to Truman by Jones, and the ownership of either Jones or plaintiffs; deny that they are the subtenants of Truman, or that Truman is in possession through them; and set up that they are and for many years have been in possession and the owners in fee of the premises. They also plead the pendency of this action.

Defendant Truman answered, setting out a copy of the alleged lease, which specifies that Truman is to harvest certain crops upon the land, and divide the same between the parties as therein specified; to gather and sell the fruit growing thereon, and divide the proceeds; and that for such purpose he may have charge of the orchard and remove the fruit up to November, 1881, and may enter and remove hay and barley which may be upon the ranch after September 1st, the date of the expiration of the lease. It is also provided that if Jones

shall sell the ranch prior to September 1st, he shall have the right to place the purchaser in possession, etc.

Truman denies that the other defendants are or ever were his subtenants, or that he continues in possession, or that he failed to surrender possession, or that he has been in possession since September 1, 1881, and denies, as do Benson and wife, by an amendment to their answer, that three days' notice in writing was given them, or any or either of them, to quit or deliver or surrender the premises.

Johnston answered, denying substantially the allegations of the complaint.

A trial was had, verdict for defendants, and judgment in their favor for costs was entered thereon November 18, 1881.

The judgment in the action of forcible detainer did not involve the question of title to the demanded premises, and was no bar to the action of ejectment. (*Kirsch* v. *Smith*, 64 Cal. 13.)

" Judgments in actions of forcible entry and unlawful detainer are to the same extent as judgments in other actions conclusive upon the questions within the issues, and determined by the court or confessed by the parties.

" The title to the property is never in issue in these actions; and therefore the judgment, whether for the plaintiff or defendant, cannot affect the title." (Freeman on Judgment, sec. 302.)

The whole issues in the action of unlawful detainer related to the possession of defendants as tenants or subtenants of the plaintiffs subsequent to May 5, 1881, and to their holding over as such tenants after the expiration of the lease and notice to quit, and whether defendants had or had not title or possession, except under the lease, were not questions to be determined in the cause, and the judgment roll was not therefore evidence of title in the defendants, or of possession, except as the

tenants of the plaintiffs, and as no issue of that character is made on either the law or equity side of this case, the judgment was not evidence for any purpose. (Freeman on Judgments, sec. 257.)

### FINDINGS.

The facts as deduced by the court from the evidence establish the formation and consummation of a deliberate scheme on the part of Jones, Beatty, and Fisk to defraud Benson of his property, in the execution of which scheme they exercised energy and perseverance worthy of a better cause.

The record is replete with evidence in support of the findings on this branch of the case.

It unfolds a series of acts most reprehensible, and which it is the duty of courts of equity to condemn.

We must not, however, in our zeal to punish the guilty, make our condemnation so broad as to involve the innocent.

The court below has found that plaintiffs were innocent purchasers of the demanded property for a valuable consideration, without notice of the fraud of their grantor, and without such knowledge as would reasonably put them upon inquiry.

After a careful review and analysis of the testimony, we are of opinion that there is not only a substantial conflict in the evidence on this question of notice to plaintiffs, but that the proofs predominate in their favor.

Upon the question of inadequacy of the price, the court found that the demanded property with the title assured would would be worth thirty thousand dollars, but that a suit for the partition of the San Pablo rancho, of which the upland of the demanded premises were parcel, had been pending since 1867, was hotly contested, and is still pending and undetermined, in which action an interlocutory decree had been entered adverse to the claimants of Benson; that a receiver had been appointed

and his appointment affirmed by this court, who claimed possession of the land and the right to lease the same, as well as three thousand dollars back rent, etc.

Also that a portion of the land designated as over-flowed or salt marsh was claimed adversely to Benson by the owners of the rancho Sobrante, which claim was pending on final survey before the United States land department, and the commissioner of the general land-office had rendered his decision sustaining said adverse claim, in consequence of all of which the right, title, and interest of Benson in and to the land was not worth and would not sell for what the land itself with a clear title was worth; that in fact the land had no market value, but that the real estate might reasonably be allowed to represent, so far as the transactions involved in this suit are concerned, a purchasing power equivalent to eighteen thousand dollars.

It is a fact open to observation that most men of means do not deal in and pay their money for property the title to which is subject to the vicissitudes attending that of the demanded premises, and of the limited number who are willing to purchase under such circumstances, it is not too much to say that the purchase price will be reduced to such sum compared with the intrinsic value of the property as to make the chances of gain commensurate with the risk taken.

We are not, therefore, under the surroundings, surprised that the property sold for no more than nine thousand dollars in cash, and find nothing in that fact to warrant an inference of notice to the purchasers of the fraud of Jones, their grantor; nor do we deem it sufficient, under the circumstances, to have put a reasonable man upon inquiry.

Appellants attack the findings as insufficient to warrant the conclusion that Benson conveyed the property, upon the grounds that his deed of conveyance to Jones was deposited in escrow with Haven; that the dispatch

which he sent to Haven from Texas, where he and Jones then were, under which the deed was delivered to the agent of Jones, was procured to be sent by the fraud of Jones, and by the exercise of undue influence on his part over Benson; and therefore that the deed thus procured did not vest title in the grantee; and *Harding* v. *Handy*, 11 Wheat. 125, and *Alone* v. *Jewell*, 94 U. S. 506, are cited in support of the positions.

A reference to these cases shows that in each of them the grantors were so incapacitated by age and disease as to be, if not insane, at least incapable of comprehending fully the nature and effect of the transactions in which they were engaged, when they executed the deeds, and as against the grantees, they were set aside, although in one of the cases more than six years had elapsed between the delivery of the deed and suit brought.

In the present case, the findings are against the incompetency of Benson, and established, — 1. The fraud practiced upon him by Jones, Beatty, and Fisk, whereby he was induced to convey his property and order the deed to be delivered to the grantee; and 2. That plaintiffs are innocent purchasers, etc.

Whatever the rule may be as to vesting of title in the grantee, or in an innocent purchaser, etc., under the latter, in cases where the grantor is incompetent to execute a conveyance of his property by reason of mental incapacity, or unsoundness of mind, questions which do not arise here, we are clearly of opinion that where, as in the present case, there were parties competent to contract, and where a deed was executed and delivered through the fraudulent devices of the grantee, the conveyance was not *void*, but *voidable*, and liable, as between the parties, to be rescinded. (Civ. Code, secs. 1566, 1567, 1689.)

The title in such cases vests in the grantee subject to be divested by a rescission of the sale.

But where the grantee has in turn conveyed the prop-

erty to an innocent purchaser for a valuable considera-
tion, without notice, the right of the defrauded grantor
to recover his property ceases.

Pomeroy in his work on Equity Jurisprudence (voi.
2, sec. 777) states the rule thus: "Where a conveyance
has been obtained by the grantee's fraud, so that it
would be set aside at the suit of the defrauded grantor,
but the fraudulent grantee has in turn conveyed to a
*bona fide* purchaser for value, and without notice, the
latter will take and hold the property free from all these
equities, protected against the equitable remedies of the
original defrauded owner."

We see nothing in the contention of appellants, that
the contract of March 1, 1881, between Benson and
Jones, was notice to plaintiffs of certain conditions
precedent to the delivery of the deed, which can render
them liable.

That contract was properly recorded, and imparted
notice of its terms and conditions to all the world, but
it provided that when the deed was delivered, the trade
should be fully completed and ended, and neither party
should have any claim upon the other.

According to the cross-complaint, a new agreement
was made between the parties after they arrived in
Texas, and through the fraudulent practices of Jones,
Benson was induced to, and did, as the evidence and
findings show, on the fourteenth day of May, direct the
delivery of the deed, which was accordingly done.

Plaintiffs, at the date of their purchase, were informed
the deed had been delivered by direction of Benson,
and in corroboration of the statement, the agent and
attorney in fact of Jones produced and delivered it to
them as a muniment of their title.

That Benson was entirely willing to deliver the deed,
and ordered it to be delivered, there can be no doubt.

If the purchasers, Blum and Fish, were bound to take
notice of anything by virtue of the contract, it was of

its contents as it existed and remained in force; and Benson cannot be heard to say he waived the conditions precedent to the delivery of the deed and delivered it, and at the same time hold Blum and Fish to a responsibility based upon the non-performance of the conditions which he had thus waived.

The nineteenth finding, or so much thereof as finds "that Blum, acting for himself and his copartner, Fish, purchased the land described in the cross-complaint from Jones," etc., is objected to as being contrary to the sworn answer to the cross-complaint.

The cross-complaint avers that "Walter Stowell claims some interest in said land, the nature and extent of which the defendants are ignorant; but that said Stowell took and obtained said interest and claim in said land with full knowledge and notice of said fraud and undue influence aforesaid; and that his grantors were not innocent purchasers of said land for value."

The cross-complaint had previously charged that the land was conveyed by Beatty and Fisk, as attorneys in fact for Jones, to "L. J. Fish and Simon Blum, for the alleged sum of nine thousand five hundred dollars," and the prayer of the cross-complaint asks that the deed be set aside and canceled.

The answer to the cross-complaint admits the purchase from Jones by Fish and Blum; avers that it was without notice of fraud on the part of their grantor, etc.; says the deed to them was executed and delivered on the seventeenth day of May, 1881; and subsequently, after denying that Stowell took or obtained his interest or claim in said land with notice, etc., "aver that the said Stowell and the said Blum and Fish were each and all of them purchasers for fair value of all said land, without any knowledge, notice, or suspicion of any of the alleged frauds and evil practices set forth in the bill; . . . . they deny that said Stowell has paid no part of any sum of money or other consideration for said land or any interest there-

in; but they allege that he paid his proportion of the pur-chase-money, which was one half, at the date and delivery of the deed to him, which was on the —— day of May, 1881."

So, too, the answer states that "plaintiffs, further an-swering, say that they purchased the said real estate from the said C. J. Jones, by deed bearing date the seventeenth day of May, 1881, for the consideration of nine thousand dollars; the said deed was duly executed and delivered on said day, . . . . and said deed . . . . grants, bargains, sells, and conveys unto the said Lafay-ette J. Fish and Simon Blum, and to their assigns for-ever," etc.

The term here used at the outset would indicate that all the plaintiffs were meant, but when it proceeds to describe the deed, it clearly appears that it is the con-veyance to Fish and Blum which is being referred to.

We fail to find in these pleadings any allegation that Stowell purchased jointly with Fish and Blum, but on the contrary, the inference from the cross-complaint and answer is irresistible that he did not do so; and the fact that the answer, after stating the facts as to the several purchases by Stowell and the other plaintiffs, proceeds to aver that Stowell, Blum, and Fish were each and all of them purchasers for fair value, without notice, etc., does not modify this inference.

No doubt the pleadings might have been more specific and precise, but they were not calculated to mislead the defendants; and indeed, so far as the answer sets up, the particulars of the conveyances were immaterial aver-ments.

The cross-complaint charged the plaintiffs as purchas-ers, with notice of the fraud of their grantors. The answer denied such notice, averred their good faith and a valuable consideration. Beyond this it was not neces-sary to go.

It devolved upon defendants, under the allegations of

their cross-complaint, to prove the conveyances (if denied) which they alleged to have been made. This they did by offering in evidence: —

1. The deed from Jones to Blum and Fish, dated May 17, 1881.

2. The deed from Blum and Fish for an undivided one half of the premises, dated June 2, 1881.

We are of opinion that the pleadings taken together do not show a joint purchase by Blum, Fish, and Stowell, and therefore that the nineteenth finding is not subject to the criticism of being contrary to the answer.

We deem it unnecessary to discuss the other objections made to the findings of the court, as upon examination we think them insufficient to warrant a reversal of the cause.

The judgment of the court below and the order appealed from should be affirmed.

Belcher, C. C., and Foote, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Rehearing denied.