[Civ. No. 2220.   Third Appellate District.—March 14, 1921.]

KATHERINE A. MILLAR, Respondent, v. ROBERT F. MILLAR et al., Executors, etc., Defendants; AGNES H. ETZEL, Administratrix, etc., et al., Appellants.

[1] SEPARATE MAINTENANCE—CROSS-COMPLAINT TO ANNUL MARRIAGE— TEMPORARY ALIMONY — EXECUTION. — In an action by the wife against the husband for separate maintenance, if the defendant by cross-complaint seeks to annul the marriage upon the ground of fraud, the plaintiff is entitled to whatever rights in respect to temporary alimony she would be entitled to in an independent suit for annulment, including an execution as of course for the allowance.

[2] ID.—ORDER FOR ALIMONY PENDENTE LITE—APPEAL.—In an action by the wife against the husband for separate maintenance an order for alimony *pendente lite* is, in effect, a separate judgment in an intermediate proceeding, and as such is appealable by virtue of the provisions of subdivision 1 of section 963 of the Code of

Civil Procedure, the appealability of such order not being affected by the fact that an order of court is required to have an execution issue thereon.

[3] ID.—EFFECT OF UNDERTAKING ON APPEAL—CONSIDERATION.—In an action by the wife against the husband for separate maintenance, the giving of an undertaking on appeal from an order for the payment of alimony *pendente lite* deprives the court of any discretion to order the issuance of a writ of execution on such order and prevents the clerk from performing the ministerial act that would ordinarily follow such order, and therefore, such an undertaking is not void for want of consideration.

[4] ID. — DEATH OF DEFENDANT — PRESENTATION OF CLAIM — ACTION AGAINST SURETIES.—Where, in an action by the wife against the husband for separate maintenance, the husband dies pending an appeal from an order for the payment to the plaintiff of alimony *pendente lite,* the plaintiff is not required to present a claim against his estate based on such order as a condition precedent to the recovery of judgment against the sureties on the undertaking to stay execution of such order pending the appeal.

APPEAL from a judgment of the Superior Court of Solano County. W. T. O'Donnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. E. Bolton for Appellants.

Metson, Drew & Mackenzie, R. G. Hudson and Garret W. McEnerney for Respondent.

BURNETT, J.—Two appeals involving the same subject matter have been submitted together upon one set of briefs, and they will be considered in one opinion. In one, Joseph Etzel and Forest Lee Atkinson, sureties on an undertaking to stay execution of an order for alimony *pendente lite* appealed from a judgment rendered against°them in favor of Katherine A. Millar on said undertaking on September 23, 1918. The other is by said Katherine A. Millar from an order of the superior court of November 20, 1918, vacating and setting aside said judgment.

The original action was brought by a wife against her husband to obtain maintenance without divorce. The husband filed an answer and also cross-complaint in which latter pleading he sought to annul the marriage upon the

ground of fraud. After the cause was at issue upon said cross-complaint the plaintiff moved for alimony *pendente lite.* The motion was granted and from the order the husband took an appeal and gave the undertaking in question. While this appeal was pending, the case was tried upon its merits and the marriage annulled upon the ground set forth in the cross-complaint. The wife appealed from this decree, but it was affirmed by the supreme court in *Millar* v. *Millar,* 175 Cal. 797, [Ann. Cas. 1918E, 184, L. R. A. 1918B, 415, 167 Pac. 394]. The defendant died after said order for alimony was made and after said judgment was rendered in the superior court. His executors were substituted and they prosecuted an appeal from the order granting alimony *pendente lite.* This appeal was thereafter dismissed by the supreme court in the following order: "It appeared that defendant, James Millar, is dead, and that his executors have been substituted in his stead by order in the superior court, it is ordered that said executors be substituted as defendant herein. Motion to dismiss granted and appeal ordered dismissed." More than thirty days after the filing in the superior court of the *remittitur* thereon the plaintiff moved for judgment against the sureties, which was granted. During the pendency of the two appeals herein, Joseph Etzel, one of the sureties, died, and by order of this court his administratrix has been substituted in his place and stead.

It does not appear upon what grounds the order setting aside said judgment was made, but the contentions of the sureties in support of said order and in opposition to said judgment may be summarized as follows: (1) The order for alimony was not appealable and the undertaking given to stay the execution of said order was therefore without consideration and no liability was or could be incurred on said undertaking. (2) The action in which the judgment against the sureties was recovered abated by reason of the failure of Mrs. Millar to present a claim against the estate of her husband, and hence it was improper to render judgment against said sureties.

[1] As to the first point, they assert: "There must be at the time the undertaking is given an appealable order and one upon which execution has been issued, or can be issued, as a ministerial act by the clerk of the

court.'' It is claimed that the order herein was not enforceable because the court had made no order directing the issuance of execution. . This position is grounded upon the peculiar language of section 137 of the Civil Code in reference to a suit for maintenance. Therein it is provided that ''During the pendency of such action the court may, in its discretion, require the husband to pay as alimony any money necessary for the prosecution of the action and for support and maintenance, and execution may issue therefor in the discretion of the court.''

The first answer of plaintiff to this contention is that ''the defendant's cross-complaint transformed the action into one for annulment of marriage and gave to the plaintiff whatever rights in respect of temporary alimony she would have had in 'an independent suit for annulment.' '' Since, therefore, it is not disputed that, in such action for annulment, execution would issue as of course upon an order for alimony, and application for said order was made after issue joined in said cross-complaint, it is urged by plaintiff that the case is not one for the application of said section 137. The force of the argument depends manifestly upon the effect of the cross-complaint. In section 808 of Pomeroy's Remedies and Remedial Rights it is said: ''The only real difference between a complaint and a cross-complaint is, that the first is filed by the plaintiff, and the second by the defendant. Both contain a statement of the facts, and each demands affirmative relief upon the facts stated. In the making up of the issues and the trial of questions of fact, the court is governed by the same principles of law and rules of practice in the one case as in the other. When a defendant files a cross-complaint, and seeks affirmative relief, he becomes a plaintiff and the plaintiff in the original action becomes the defendant in the cross-complaint.''

It is accordingly held that a cross-complaint must contain every allegation which would be essential to an original complaint upon the same cause of action. (*Coulthurst* v. *Coulthurst*, 58 Cal. 239.)

In fact, where the complaint sets forth an action in law and the cross-complaint contains a cause of action which is of equitable cognizance, it is the duty of the court to determine first the issues involved under the cross-complaint.

(*Whittier* v. *Stege,* 61 Cal. 238; *Fish* v. *Benson,* 71 Cal. 428, [12 Pac. 454].)

Undoubtedly the purpose of allowing a cross-complaint is to avoid a multiplicity of suits and thereby save vexation and expense; and for all practical purposes, as claimed by plaintiff, the situation involves a consolidation of two independent actions arising out of, or related to, the same transaction.

At any rate, in view of the cross-complaint herein it cannot be said that the action is wholly for maintenance, but it involves also the annulment of said marriage. Assuredly, then, the plaintiff would be entitled to an execution for the allowance, which may as well be referred to the cross-complaint as to the complaint in the action.

We find nothing in the opinion of the supreme court in *Lowe* v. *Superior Court,* 165 Cal. 708, [134 Pac. 190], inconsistent with the generally accepted views as to the nature of a cross-complaint. The gist of that decision may be seen from this quotation taken from the syllabus: "The filing of a cross-complaint, although for some purposes treated as the commencement of a new action, is a proceeding in the action commenced by the filing of the plaintiff's complaint which is expressly authorized by statute, the design of the statute being to enable all matters in dispute between the parties 'relating to or depending upon the contract or transaction upon which the action is brought, or affecting the property to which the action relates,' to be determined in a single action, and by a single judgment which shall give to a defendant seeking it such affirmative relief as he is entitled to." Since it was held to be a proceeding in the action which was instituted by the filing of the complaint, the cross-complaint was deemed pending from the beginning to the extent of applying the provision of the statute: "Provided always that no action pending against any corporation shall abate thereby (the forfeiture of its charter), but may be prosecuted to final judgment, the same may be enforced by execution with the same force and effect and in like manner as though no forfeiture had occurred."

In this connection plaintiff cites two decisions from other jurisdictions that are very much in point: *Slocum* v. *Slocum,* 86 Ark. 461, [111 S. W. 806], and *Willits* v. *Willits,* 76

Neb. 228, [14 Ann. Cas. 883, 5 L. R. A. (N. S.) 767, 107 N. W. 379].

In the former the wife filed an unverified complaint for divorce and the husband filed an answer and cross-complaint. She thereupon made application for alimony *pendente lite.* The rule in that state is that a *plaintiff* wife cannot obtain such relief except upon *sworn* evidence, but a *defendant* wife is not required to make such showing. The trial court treated the cross-complaint for the purposes of the plaintiff's application, as though it were an independent action in which the wife was a defendant, and allowed her temporary alimony including costs and counsel fees. The supreme court upheld the ruling, saying in the course of the opinion: "It is recognized and permissible practice for the defendant to file a cross-bill and ask independent relief in divorce suits. When he does so, his suit is as separate and distinct from that of his wife as if the wife had brought no suit, and the finding of the court should be upon each separately."

In *Willits* v. *Willits* the wife sued for maintenance. Her husband filed answer and also a cross-complaint for annulment. Suit money was allowed to the wife, although the court annulled the marriage on the cross-complaint. The husband appealed from the order of allowance, claiming that it was unauthorized because it was made in an action for maintenance. In affirming the order the supreme court said: "So far as the suit money is concerned, the defendant takes the position that because the wife's suit was not brought for a divorce, but merely for maintenance, she is not entitled to suit money. Whatever the rule may be with regard to an allowance for suit money in an action brought merely for maintenance, it is well settled that in an action by the husband to annul the marriage, the wife is entitled to alimony *pendente lite* and counsel fees, and the fact that the defendant proceeds by cross-petition, instead of an original suit, does not change the rule."

[2] Moreover, if we disregard the cross-complaint and treat the case as involving an order for alimony in an action solely for maintenance, the order is nevertheless final and appealable. In other words, its appealability does not depend upon its enforceability by execution. There is no doubt that, while we usually refer to such allowance as an

order, it is really a separate judgment in an intermediate proceeding, and as such is appealable by virtue of subdivision 1 of section 963 of the Code of Civil Procedure. (*Sharon* v. *Sharon*, 67 Cal. 185, [7 Pac. 456, 635, 8 Pac. 709].) The authorities hold that a final judgment is one that completely adjudicates the rights of the parties submitted to the court for determination. Herein the question was whether the plaintiff was entitled to any allowance for "alimony," so called. The application was regularly heard and upon the evidence submitted the court determined that she was entitled to an allowance and adjudged the amount thereof. The fact that an order of the court might be required to have an execution issue does not affect the finality of the judgment itself any more than if an order were made to stay the execution. The judgment and the execution of the judgment are two separate and distinct considerations. Necessarily, the finality of a judgment *precedes* and does not follow its enforceability.

In *Blake* v. *Blake*, 80 Ill. 523, the plaintiff, upon the ground that the execution of the order was not demandable as of course, but only in the discretion of the court, moved to dismiss the appeal from an order allowing temporary alimony in a suit for divorce. But the court held that such circumstance did not affect the finality or appealability of said order, as this depended not upon whether it was presently enforceable, but whether the court had the power to award an execution to enforce it.

In *Zappettini* v. *Buckles*, 167 Cal. 27, [138 Pac. 696], is found an interesting discussion of the difference between an interlocutory and a final judgment, and it is held that a judgment is final if it determines the rights of the parties and nothing remains but to carry it into effect, although some action may be required of the court to enforce the judgment.

Many other authorities are cited by plaintiff to the same effect, but there can be no necessity for noticing them specifically. To show that this quality of the judgment does not depend upon its present enforceability she suggests this apt illustration: Suppose in a suit for divorce an order for alimony is made payable in sixty-five days after the making of the order. Of course, an execution could not

issue until the money became due. But an appeal from said order would have to be taken within sixty days after it was made. No one would contend that the provision of the order extending the time for payment would toll the period for taking an appeal. If an appeal were not taken at least five days before the money was due, in other words, before an execution could issue, the appeal could be dismissed.

Upon this particular question that an order staying execution does not affect the appealability of the judgment, plaintiff cites *Vickers* v. *Tyndall*, 168 Ill. 616, [48 N. E. 214]; *Hamill* v. *Bank of Clear Creek County*, 7 Colo. App. 472, [43 Pac. 903]; *Meredith* v. *Peterson*, 108 Iowa, 551, [79 N. W. 351]; *State* v. *Downing*, 40 Or. 309, [58 Pac. 863, 66 Pac. 917]; *Gaston* v. *Boyd*, 52 Tex. 282; *Arnold* v. *Sinclair*, 11 Mont. 556, [28 Am. St. Rep. 489, 29 Pac. 340]; *Winthrop Iron Co.* v. *Meeker*, 109 U. S. 180, [27 L. Ed. 898, 3 Sup. Ct. Rep. 111, see, also, Rose's U. S. Notes].

[3] But as we understand the position of the sureties, they attach more importance to the contention that since an order of the court was required to make the execution issuable, it cannot be said that their undertaking operated to stay the execution and therefore said undertaking was without consideration and void. In opposition to this, plaintiff contends, and cites authorities in support of the contention, that "but for the filing of the surety's undertaking to stay execution a writ of execution to enforce the order for alimony would have issued as of course and without any express direction for its issuance." Plaintiff's view is that the judgment is itself a judicial declaration that she was entitled to the money, and that the provision of the statute reserving to the court a discretion as to withholding the issuance of the execution requires the court, by an express provision to that effect in the order or judgment itself, to prohibit or stay its issuance for a definite or indefinite time, or else the execution will issue as of right.

But be that as it may, we are entirely satisfied that the undertaking was effective to stay the execution and therefore the consideration was supplied. It deprived the court of any discretion to order its issuance as it also prevented the clerk from performing the ministerial act that would

ordinarily follow such order. If, notwithstanding such undertaking, plaintiff had applied to the court for the order, can it be doubted that the undertaking could have been successfully urged as a bar to the proceeding?

The case is one that falls clearly within the provisions of sections 942 and 946 of the Code of Civil Procedure. The appeal is from "a judgment or order directing the payment of money." The undertaking bound the sureties "in double the amount named in the judgment or order" to pay the amount if said judgment or order should be affirmed or "the appeal be dismissed." The undertaking, therefore, as declared in the latter section, *stayed* "all further proceedings in the court below upon the judgment or order appealed from." The section is too plain for controversy. However, a case in point is *McAneny* v. *Superior Court,* 150 Cal. 6, [87 Pac. 1020], wherein it is said: "The stay of proceedings on the alimony order, thus effected, operated as a *supersedeas,* and during its operation deprived the superior court of all power to enforce the order appealed from, either by execution or by proceedings for contempt, or through the appointment of a receiver." Furthermore the court said: "If the order appointing the receiver in this case was an act in furtherance of the enforcement of the alimony order which was stayed by the appeal, it was prohibited by the statute which in such cases forbids further proceedings upon the order appealed from and matters embraced therein (Code Civ. Proc., sec. 946), and it was, in a certain sense, in excess of the jurisdiction of the court."

An application in the instant case for an order for the issuance of execution would assuredly be "in furtherance of the enforcement" of the judgment and is certainly prohibited by said statute.

Nor can it be assumed that if the undertaking had not been given, the court would not have made such order. The presumption is to the contrary. It is not to be supposed that the court would make an allowance and then decline to do whatever might be necessary to carry such order into effect. At any rate, the undertaking prevented the plaintiff from taking any steps toward securing the fruits of the judgment, and it does not lie in the mouth of the sureties to say that, if the undertaking had not been given, an

execution might not have issued. The probability that it would issue, and the certainty that any such probability was forestalled by reason of said undertaking furnished sufficient basis for the obligation of the judgment debtors. The contention of the sureties seems to resolve itself to this: We have given an undertaking and have thereby tied the hands of the court and its ministerial officer in relation to the execution, but since plaintiff did not apply for a "preliminary" order, which the court would be powerless to grant, we deny the plaintiff's right to claim that the execution was stayed. We do not understand that plaintiff was required to do such a vain and useless thing in order to urge successfully the validity of the bond.

[4] The second contention of the sureties is based upon the provision of section 1502 of the Code of Civil Procedure, as follows: "If an action is pending against the decedent at the time of his death, the plaintiff must in like manner file his claim with the clerk, or present it to the executor or administrator for allowance or rejection, authenticated as required in other cases; and no recovery shall be had in the action unless proof be made of such filing or presentation." Millar died, as we have seen, after the trial of the action and before the appeal was heard in the supreme court. It is admitted that this claim for alimony was not presented as required by said section 1502. Hence the assertion of the sureties that the action abated and no further proceedings could be taken for the purpose of enforcing said claim. The position is, if we understand it, that the judgment for alimony was suspended, was virtually rendered of no force and effect until the claim therefor was so presented, and that only by such presentation could the judgment be revived. They insist that this does not involve the release of one only of several obligors, as was the case in *Bank of Stockton* v. *Howland,* 42 Cal. 129, which concerned the joint makers of a promissory note, wherein a claim was not presented to the administrator of one who had died, but it affects, so they claim, an essential condition of the liability of the sureties on their bond. In other words, the liability of the sureties depended upon the liability of Millar, that the suspension of his liability would likewise produce a suspension of theirs, and that while this

condition existed no legal proceeding could be taken to enforce the liability of the sureties.

In the first place, although the statute provides (sec. 1049, Code Civ. Proc.), that "an action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied," it is at least doubtful whether the term "pending" is thus used in said section 1502. It would seem quite reasonable to hold that it is limited to the period of time after the filing of the complaint and prior to the rendition of judgment in the trial court. No particular reason appears why a claim that has become merged into a judgment should thus be presented. Of course, a judgment of the superior court is entitled to full faith and credit until reversed or modified on appeal. Indeed, the particular statute, applicable to the situation herein is found in section 1505 of the same code. Therein it is provided that where a judgment is obtained in his lifetime, no execution shall issue thereon after his death "except as provided in section six hundred and eighty-six." As to a judgment for the recovery of money—which was this case—it "must be filed with the clerk *or* presented to the executor or administrator, like any other claim." Said judgment was filed with the clerk and hence it was not necessary "to present it to the executor or administrator." As stated before, it would constitute a recognized claim against the estate, to be paid as other claims, subject, of course, to any adverse ruling upon appeal.

In the matter of the *Estate of Brennan,* 65 Cal. 517, [4 Pac. 561], the party against whom a judgment was rendered died after moving for a new trial but before the motion was heard. The judgment was modified on the hearing of the motion, and the supreme court held that said section 1505 of the Code of Civil Procedure did not require the presentation of the judgment. It was considered sufficient that the executrix had been made a party to the action and had fully represented the estate.

Moreover, the claim herein involved was not such as the statute requires to be presented to the administrator or executor. Said section 1502 must be read in connection with section 1493 of the Code of Civil Procedure. In *Hibernia etc. Soc.* v. *Wackenreuder,* 99 Cal. 503, [34 Pac. 219], it

is said that section 1502 "simply means that when an action
is pending against a decedent at the time of his death, the
plaintiff therein is not relieved from the duty of presenting
for allowance the claim upon which it is based, when this
claim is of that character that he would have been required
to make such presentation in order to preserve its validity
as a claim against the estate if such action had not been
brought in the lifetime of the decedent." And in the same
decision it is held that we must look to said section 1493
to determine the character of claims that must be thus pre-
sented. Such claims are those "arising upon contracts."
It cannot be said in any just sense that an allowance for
suit money or for temporary alimony involves a claim "aris-
ing upon contract." It is a matter entirely of statutory
regulation and is not affected by any agreement of the par-
ties.

In *Audubon* v. *Shufeldt*, 181 U. S. 575, [45 L. Ed. 1009,
21 Sup. Ct. Rep. 735, see, also, Rose's U. S. Notes], it is
said: "Alimony does not arise from any business transac-
tion, but from the relation of marriage. It is not founded
on contract, express or implied, but on the natural and
legal duty of the husband to support the wife." Many de-
cisions to the same effect from state jurisdictions are therein
cited.

In the subsequent decision, in *Gould* v. *Gould*, 245 U. S.
151, [62 L. Ed. 211, 38 Sup. Ct. Rep. 53], the foregoing
case was quoted with approval, and the court held that ali-
mony paid to a divorced wife was not subject to an income
tax.

Again, the sureties bound themselves, as we have seen,
to pay the judgment "if the appeal be dismissed." The
appeal *was* dismissed and therefore the very condition hap-
pened which was to fix irrevocably their liability. It was
not a condition of their obligation that plaintiff should
make any effort to collect the judgment from Mr. Millar.
He was not a party to the undertaking, and defendants
cannot inject into said instrument some condition that is
not expressed therein. While they cannot be bound by any-
thing not found in said undertaking they must stand upon
its terms. This, of course, is elementary. It follows neces-
sarily that plaintiff was not required to take any steps
toward the enforcement of the judgment against Millar.

It was to the interest of the sureties to have it so enforced, but it was a matter of indifference to plaintiff as far as this action is concerned. Plaintiff might elect to rely entirely upon the responsibility of the sureties, and do nothing toward presenting any claim to the executor or administrator, if we assume that such presentation was necessary to keep the claim alive against the estate.

To restate the situation: The undertaking was given in consideration of the stay of execution. It was effectual for that purpose. The sureties promised in consideration thereof that they would pay the judgment if the appeal was dismissed. The appeal was dismissed and thereby their obligation became absolute. Plaintiff might have brought an action directly against the sureties, but the statute provides (sec. 942, *supra*) an alternative remedy, which was adopted by the plaintiff. Indeed, in their undertaking, defendants expressly agreed that: "If the appellant does not make such payment within thirty days after the filing of the *remittitur* of the supreme court in the court from which the appeal is taken, judgment may be entered in said action, on motion of the respondent, against the undersigned sureties for the whole amount which may be then due pursuant to the terms of said order." The *remittitur* was so filed; plaintiff waited more than thirty days, no part of the amount due under said judgment was paid, and, upon motion, judgment was entered against the sureties for said amount. No valid defense was offered to said motion and the facts were undisputed. Of course, if the sureties had shown that they were misled by the conduct of plaintiff or that the obligation was extinguished, a different question would be presented, but that plaintiff may or may not have endeavored to secure payment from the estate of Millar is a matter of no consequence as far as this case is concerned.

We do not understand the sureties to claim that the judgment for alimony was rendered inoperative by reason of the judgment in the main action nullifying the marriage, although there may be an intimation to that effect in their brief. At any rate, as it is not urged, for the reason, no doubt, that it does not possess merit, we need not consider it.

The judgment is affirmed.

Prewett, P. J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 12, 1921.

All the Justices concurred.