[Civ. No. 6008.   Third Appellate District.—July 7, 1938.]

MARCIA KAGEE, Respondent, v. CHARLOTTE ELIZA-BETH BENCICH, as Executrix, etc., Appellant.

J. J. Henderson for Appellant.

Ralph H. Lewis for Respondent.

PULLEN, P. J.—From a judgment in favor of plaintiff, defendant appeals. ■ As grounds for such appeal defendant alleges that the court erred in holding that plaintiff was not required by law to file a claim against the estate as a prerequisite to maintain the action; secondly, that the findings and judgment are contrary to the evidence, and that the evidence is insufficient to sustain the findings in that there is no testimony that the diamonds hereinafter mentioned ever came into the possession of defendant, and thirdly, that the action is barred by the statute of limitations.

From the record it appears that during the year 1931 respondent was the owner of five diamond rings, which she valued at the sum of $1500. These rings at that time were pledged at Zemansky's Loan Office in Sacramento, as security for the repayment of the loan of $150.

During the summer of 1931, Ed. R. F. Walsh, now deceased, accompanied by his wife and Mrs. Kagee, the respondent, went to Zemansky's Loan Office, where Walsh redeemed the rings, he advancing the $150 necessary so to do. He thereupon took possession of all of the rings and agreed to hold them for an indefinite length of time, subject to redemption by respondent. Walsh, accompanied by respondent, thereupon went to the California National Bank, where he placed them in a safe deposit box which he had in that institution. Mrs. Lottie Cecelia Walsh, his wife, accompanied them to the loan office and to the California National Bank and was present during the transaction.

Walsh became seriously ill about the middle of October, 1931, and was thereafter confined to his home until his death in October, 1932. Prior to his illness respondent, about the 5th of October, 1931, paid $45 to Walsh on account, and on November 5, 1931, while decedent was sick in bed she paid an additional $25 thereon. This later payment was made in cash to Lottie Cecelia Walsh at the home of appellant and decedent. At that time Mrs. Walsh, in her own handwriting, delivered a receipt to respondent, reading as follows:

"Nov. 5–1931

"Received of Marcia $25.00, part payment on loan on diamond rings.

"Mrs. Ed. Walsh."

Walsh's condition continued to grow worse after this last payment, and it is the testimony of respondent that thereafter she made several efforts to see him but was unable to do so. Appellant testified that prior to Walsh's illness all of the property in the safe deposit box in the bank was transferred to a safe in his home, where it remained, and the contents thereafter came into the possession of Mrs. Walsh immediately upon the death of Walsh.

It appears from the testimony of respondent, that upon several occasions between the date of Walsh's death and 1935, she discussed with Mrs. Walsh the matter of the redemption of the rings. Upon these occasions Mrs. Walsh refused to discuss the matter, saying that she was then too busy, but that at some other time she would discuss the matter. Mr. Williams, a corroborative witness, testified that on one occasion he took Mrs. Kagee, the respondent, to the home of Mrs. Walsh, and Mrs. Kagee approached Mrs. Walsh and said, "I would like to get my rings." Mrs. Walsh was just about to enter a taxicab, which had drawn up to her home, when she said that she couldn't be bothered, and drove away. At that time Williams testified that Mrs. Kagee had with her money with which to make a payment on the pledge, the amount of which, however, the witness did not know. In 1935, Mrs. Walsh finally told respondent that she did not have the rings. Mrs. Walsh was called as a witness in her own behalf, but her testimony was unsatisfactory and not convincing, as appears from the record, and apparently to the experienced trial judge who presided at the trial.

The foregoing evidence is entirely sufficient to justify the finding of the trial court that the rings came into the possession of Mrs. Walsh after the death of her husband.

This is an action against Mrs. Walsh for conversion in her individual capacity; therefore the code section which requires the filing of a claim against the estate does not there apply. A claim is required to be presented against the estate only when the person presenting it is making some contractual claim against the funds or property of the estate. Where the thing claimed is the value of property of a third

person which has been converted by the executor of the estate, the claim of such third person is not against the estate but against the executor personally.

The conversion constitutes a tort, and the only cases in which a claim is required to be filed are those arising upon contract. In *Thompson* v. *Byers*, 116 Cal. App. 214 [2 Pac. (2d) 496], the claim was one arising in tort. The court there held that the statute does not require the presentation of such a claim to the executor, relying upon the case of *Millar* v. *Millar*, 51 Cal. App. 718 [197 Pac. 811].

Nor is the action barred by the statute of limitations for two reasons: First, this is an action against the defendant individually and not as a representative of the estate of the decedent, and the individual waives the statute by failure to plead it. Furthermore, the evidence discloses that it was not until 1935 that Mrs. Walsh repudiated her relationship as pledgee. Prior to that time, upon each occasion at which respondent asked her for the rings, appellant would reply that she could not at that time be bothered, or that she would come to a settlement later.

To constitute a conversion, a refusal to deliver must be absolute and amount to a positive denial of plaintiff's right to possession. (*Martin* v. *Bank of America*, 4 Cal. App. (2d) 431 [41 Pac. (2d) 200].)

The complaint here was filed in May, 1936, and the action having been commenced within three years of the commission of the tort, it is not barred by the statute of limitations.

For the foregoing reasons the judgment must be affirmed, and it is so ordered.

Thompson, J., concurred.