[Civ. No. 8647. First Appellate District, Division Two.—November 22, 1932.]

CHARLES C. GARRISON, Administrator, etc., Appellant, v. JOSEPHINE BLANCHARD et al., Defendants; C. E. RAWSON et al., Respondents.

Arthur C. Fisher and John C. Packard for Appellant.

John H. Miller and Sparling & Teel for Respondents.

GRAY, J., *pro tem.*—In this action, commenced by appellant to quiet title to real property located in the city of Los Angeles, respondent Flora Ellis recovered judgment, decreeing that she was the owner of such property and quieting her title thereto against appellant's claims. On this appeal from that judgment all parties are in accord as to the facts, which are established by stipulations, judicial

records and uncontroverted testimony, but differ seriously as to their legal effect. Chronologically these facts are as follows:

On his death, at Indianapolis, Indiana, on March 11, 1910, Charles Seaton owned the property, then an unimproved lot, having acquired title by a grant deed dated October 17, 1888, for an expressed consideration of $275. As his sole heir, he left an adult son, S. M. Seaton, residing in the same city and knowing of his father's title to the property. Thirteen years after, to wit, on April 23, 1923, Southern California Bond and Finance Corporation, as plaintiff, commenced an action to foreclose a street assessment lien against the property, naming Charles Seaton as defendant. Such defendant was served by publication of summons, and his default was entered on September 27, 1923. The property was sold for $80.11 on January 21, 1924, to the same plaintiff under a decree of foreclosure, entered October 24, 1923. This purchaser conveyed, by a grant deed, reciting a valuable consideration and dated March 31, 1925, the title to the defaulting defendant, Josephine Blanchard, the wife of the corporation's president. She, on April 22, 1925 (over fifteen years after his death), filed a complaint against Charles Seaton, as defendant, to quiet her title to the property. His default, based upon an affidavit of personal service, was entered and, on May 14, 1925, a judgment, quieting her title was granted. The decree of foreclosure and judgment quieting title each appeared regular and valid upon their faces. Thirteen days later, Josephine Blanchard and her husband conveyed the property to respondent, C. E. Rawson, in consideration of a mortgage thereon for the full purchase price of $2,500. Immediately thereafter Rawson commenced the construction on the property of a residence of the reasonable value and cost of $7,500 and, upon its completion, to wit, on September 18, 1925, sold the property, so improved, to respondent Flora Ellis for $12,500, of which $2,500 was represented by said mortgage, subsequently fully paid by her. Each respondent, at the time of his or her purchase, procured an unlimited certificate of title, from a title insurance company, showing that title to the property, as appearing from the records of Los Angeles County, was vested in his or her seller. Possession of the property, at

the time of each sale, was also consistent with the record title.

On May 17, 1926 (more than a year after the granting of the decree quieting title), upon nomination of S. M. Seaton (deceased's son and sole heir), T. C. Gould was appointed special administrator of the estate of Charles Seaton, qualified upon the same day and continued to so act until the appointment and qualification of appellant as general administrator of the estate, on September 6, 1928. On the day of his appointment, the special administrator was, by *ex parte* order, substituted as defendant in the quiet title action, and served, upon plaintiff's attorney in that action, notice of motion to vacate the default decree upon the grounds, that, since Charles Seaton had died on March 11, 1910, prior to the filing of the complaint, he had not been served personally, as alleged in the affidavit of service and that such decree was null and void. After a hearing, in which both parties were represented by their attorneys, and at which such death was established without conflict, the court granted such motion on May 27, 1926. Thereafter the special administrator filed an answer, a trial was had and, on April 26, 1928, appellant recovered judgment, quieting the estate's title to the property. Neither respondents were notified of the motion or trial, nor were made parties thereto nor participated therein nor had knowledge thereof. The complaint in the present action was filed on May 19, 1926, but when respondents were served does not appear, although Flora Ellis answered on July 20, 1926.

The present action to quiet title is a collateral attack upon the judgment quieting the title of Josephine Blanchard against the claims of Charles Seaton to the property. (*New-love* v. *Mercantile Trust Co.*, 156 Cal. 657 [105 Pac. 971].)

A judgment rendered against a party in an action. who dies after its commencement but before the rendition of judgment is voidable and may not be collaterally attacked. A judgment rendered against a party, who died before the action is commenced, is void and may be collaterally attacked. (*Hogan* v. *Superior Court*, 74 Cal. App. 704 [241 Pac. 584]; 33 C. J. 1107; 15 R. C. L. 619 et seq.; notes, 126 Am. St. Rep. 622; 49 L. R. A. 153; Black on Judgments, sec. 203.) In an action to foreclose a lien upon the estate

of a deceased ward, where the record settling the guardian's account showed that notice thereof was given by posting, evidence is admissible to show that the legal representative of the ward's estate was not in existence to receive notice during a necessary part of the ten days required. (*Livermore* v. *Ratti*, 150 Cal. 458 [89 Pac. 327].) The reception of such evidence constituted a collateral attack upon the order of settlement. If a corporation ceased to exist, because of dissolution (*Crossman* v. *Vivienda Water Co.*, 150 Cal. 575 [89 Pac. 335]) or forfeiture of charter (*Llewellyn Iron Works* v. *Abbott Kinney Co.*, 172 Cal. 210 [155 Pac. 986]; *California Nat. Supply Co.* v. *Flack*, 183 Cal. 124 [190 Pac. 634]), before the commencement of the action, a judgment against it is a nullity and may be collaterally attacked. ■ Neither the doctrine of laches nor the bar of the statute of limitations has any application to a collateral attack upon a judgment void because of want of jurisdiction. (*Estate of Pusey*, 180 Cal. 368 [181 Pac. 648].) Nor can a dead man be charged with laches, for how could he have notice or knowledge of the facts which required action on his part or further, how could he act? (*Crossman* v. *Vivienda Water Co.*, *supra*.) ■ As to the deceased's sole heir, the record discloses an unexplained delay of over sixteen years in procuring the administration of his father's estate in this state, but is silent as to his knowledge or notice of the claims of Josephine Blanchard to the property. Full knowledge of the facts or of sufficient facts to put him on inquiry is an essential element to the imputation of laches to such heir. (10 Cal. Jur. 528.) The case of *Akley* v. *Bassett*, 189 Cal. 625 [209 Pac. 576], where laches was held to bar relief from a judgment void, for lack of jurisdiction, is distinguishable because there the attacking party, while a minor, had been personally served with summons, although no service had been made upon her parent, guardian or other person designated by section 411 of the Code of Civil Procedure and with full knowledge of the facts, had acquiesced for seventeen years after majority. ■ Relying upon the facts that the judgment quieting title appears valid on its face, since jurisdiction was apparently acquired of the deceased by a purported personal service of summons, respondents invoke the rule that, since recitals as to jurisdiction are conclusive on collateral attack,

a judgment valid on its face cannot successfully be so attacked. The cases enunciating this rule were concerned with judgments, in which there was a living party of whom the court could have acquired jurisdiction, but of whom it only acquired apparent but not actual jurisdiction because of lack of service of process or unauthorized appearance of an attorney. Because of the death of Charles Seaton, before the action's commencement, there was no defendant over whom the court could acquire or exercise jurisdiction. Assuming, however, that such judgment was not subject to collateral attack, if objected to, yet since the death was established by the admissions of the pleadings, stipulations of the parties and the unquestioned findings of the court, the judgment was void. (*Hill* v. *City Cab etc. Co.*, 79 Cal. 188 [21 Pac. 728]; *People* v. *Harrison*, 107 Cal. 541 [40 Pac. 956]; *Follette* v. *Pacific L. & P. Co.*, 189 Cal. 193 [208 Pac. 295, 23 A. L. R. 965]; *Akley* v. *Bassett, supra*; *La Paloma Land Co.* v. *Shannon*, 89 Cal. App. 469 [265 Pac. 295].) Although held inapplicable under the facts, this rule was recognized in *Lake* v. *Bonynge*, 161 Cal. 120 [118 Pac. 535], and in *Smith* v. *Jones*, 174 Cal. 513 [163 Pac. 890]. If the judgment were not subject to collateral attack, the motion of the special administrator to vacate the judgment made over one year after its rendition came too late. (*Canadian etc. Co.* v. *Clarita etc. Co.*, 140 Cal. 672 [74 Pac. 301]; *Smith* v. *Jones, supra.*) But as the judgment was void, the motion was properly granted, since there is no time limiting a collateral attack on a void judgment. However, the vacation of the judgment and the subsequent entry of another judgment quieting appellant's title are false quantities in the present action because those proceedings were had after respondent's acquisition of title without notice thereof and further because the same matters were relitigated in the present action.

Under the undisputed facts, it must be taken as true that both respondents Rawson and Ellis were each *bona fide* purchasers for value without knowledge or notice of the title of Charles Seaton or the invalidity of the title of Josephine Blanchard. No consideration has been given to this all-important factor, in what has been previously said. "As between the parties to the action, a judgment fraudulently obtained will be set aside and held for naught

when the fraud is made to appear. But there would be no security in titles acquired at judicial sales if the rights of a *bona fide* purchaser, without notice, could be overthrown by subsequent proof that the judgment was obtained by fraud, or that the record which showed a due service on the defendant, was in fact false. The repose of titles and indeed every consideration of public policy, demands that a purchaser at a judicial sale, without notice, under proceedings regular on their face, and by a court of competent jurisdiction should be protected as against mere errors of the court and against secret vices in the proceedings founded on fraud, accident, or mistake, and which can only be made to appear by the proof of extrinsic facts not appearing on the face of the record. No prudent person would purchase at a judicial sale, if he incurred the hazard of losing his money, in case it afterwards should be made to appear that the judgment was obtained by perjury or other fraudulent practices, or that the record, on which he relied, as proving service on the defendant, was in fact false.'' (*Reeve* v. *Kennedy,* 43 Cal. 643, 650.) A judgment quieting title, which was obtained by a publication of summons based upon a false affidavit and complaint, but which was valid on its face, will not be vacated at the instance of the defrauded party, as against a subsequent *bona fide* purchaser of the land, who acquired it upon the faith of the judgment, for a valuable consideration, and without notice or knowledge of any fact tending to show fraud in procuring the judgment. (*Doyle* v. *Hampton,* 159 Cal. 729 [116 Pac. 39].) A judgment, foreclosing a mortgage, executed by an insane person, granted upon her default, after personal service of summons, but, without appointment of a guardian for her, cannot be collaterally attacked by her heirs in an action against a *bona fide* grantee of the mortgagee, who purchased at the foreclosure. (*Dunn* v. *Dunn,* 114 Cal. 210 [46 Pac. 5].) The superior title of an innocent purchaser, acquired in good faith and for value, under a judgment, not void on its face, as against the claims of a party, defrauded by such judgment was recognized in *Stern* v. *Judson,* 163 Cal. 726 [127 Pac. 38], and in *Newport* v. *Hatton,* 207 Cal. 515 [279 Pac. 134]. ■ While the judgments involved in the above cases were rendered against living persons rather than a dead man, as in the instant case, yet the same reasons of

policy there invoked should also protect, from collateral attack, the present judgment, which is also valid on its face. Appellant should seek redress for the wrong from the parties inflicting it rather than from respondents, who did not cause or participate therein and who had a right to rely upon the judgment. (*Dunn* v. *Dunn, supra; Doyle* v. *Hampton, supra.*)

The judgment is affirmed.

Sturtevant, J., and Spence, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 22, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 20, 1933.

Preston, J., dissented.