[L. A. No. 17765.   In Bank.   Mar. 1, 1943.]

PHOEBE A. MARLENEE, as Executrix, etc., Appellant, v. JAMES E. BROWN et al., Respondents.

Vere Radir Norton, W. H. Gregory, Finlayson, Bennett & Morrow and Frank G. Finlayson for Appellant.

Milo V. Olson, Howard Painter, M. J. Rankin, R. Leslie Sparks, Thomas Reynolds and John O. Palstine for Respondents.

EDMONDS, J.—The appellant, as executrix of the estate of her deceased husband, conveyed real property which the respondents later purchased from a successor in interest of the grantee. By this action she is seeking to set aside the order of the probate court affirming the sale, to have her deed and other conveyances by which title has been vested

in the respondents declared void, and to quiet the title of the estate in the property.

Shortly after the death of Charles Lee Marlenee in 1931, letters testamentary were issued to the appellant. The estate is still in course of administration. In 1935, there was presented to the probate court a return of sale of the property in controversy to William Gaston. This return, signed and verified by the appellant, included a request that the sale be confirmed.

Upon a hearing, after due notice, the court made an order confirming the reported sale and directing that a conveyance be made accordingly. On July 1, 1935, the appellant, as executrix, signed and acknowledged such a deed, but it was not recorded until June 2, 1936, when there was also placed of record one purporting to be signed and acknowledged by Gaston conveying the same property to Taylor O. Taylor, the appellant's attorney. The respondents acquired title from Taylor in 1937. He died the following year.

According to the appellant's complaint, the land described in the return of sale is improved with buildings containing nine rental units. Taylor falsely represented to her that Gaston had purchased this property. Taylor then caused a return of a purported and pretended sale of it, together with a petition for confirmation, to be filed in the probate court. At the hearing on the return he "introduced testimony in support thereof, although he then well knew, and it is a fact, that no sale had in fact been made." Other allegations are that the appellant, at Taylor's request, and in compliance with the court's order of confirmation, signed and acknowledged a deed. This deed she placed in the custody of Roger S. Page, who had succeeded Taylor as attorney of record for her as executrix, with instructions to deliver it to Gaston for $10,000, less the amount of encumbrances of record. Neither she nor the estate has received any consideration for the deed and it was never delivered to Gaston. The deed to Gaston which appears of record purporting to have been signed and acknowledged by her was not signed, acknowledged or delivered by her as executrix, or otherwise or at all, nor was it ever delivered by or with her authority, and she had no knowledge of its existence until the latter part of 1938.

In a second cause of action the appellant alleges that if

the deed of record to Gaston "does bear her signature and acknowledgment as such Executrix, then such signature and acknowledgment were, and each was, obtained without her knowledge or consent and by means of a fraudulent trick and device of . . . Taylor" and as a part of a scheme to defraud her and deceive the probate court. Also, any deed to Gaston was executed in violation of the court's order authorizing a conveyance to the executrix on receipt of a stated consideration and she did not "cause said or any deed . . . to be delivered to . . . Gaston or to anyone for him."

By their answer, the respondents assert, among other defenses that, so far as they are concerned, the appellant is estopped to claim that the sale to Gaston was a purported or pretended one. They say that the appellant, and not Taylor, made the return of sale, and they have relied upon the order of confirmation, which is valid and regular on its face. Furthermore, the deed to Gaston which was recorded on June 2, 1936, was executed and acknowledged by the appellant and is the only deed to him which she signed. The same defense is pleaded by way of answer to the second cause of action. Twelve separate defenses follow.

Upon trial, the appellant testified that she signed the return of sale, that she was in court at the time it came on for hearing, and that Taylor testified in support of its allegations. She was positive that she signed no deed to Gaston except an unrecorded one, acknowledged before Perry F. Backus as notary public, which was produced by Page. He testified that it had been in his possession since July 9, 1935, the date it was acknowledged. But Mrs. Marlenee also said that she understood Taylor had sold the property to the respondents "on the deed that I signed to Mr. Gaston." And she admitted that although she managed the property during the administration of the estate, collecting the income directly from the tenants or through an agent, she received no rent after March 1, 1937.

In the course of her testimony, Mrs. Marlenee identified her signature on an affidavit dated July 7, 1937, which includes a recital of the services rendered by Taylor, as her attorney, during the administration of her husband's estate. According to this affidavit, on March 1, 1935, the probate court ordered her to sell all of the property belonging to the estate, and the property in controversy was sold to William

Gaston for $5,670 net, subject to liens and encumbrances of record. "But Gaston couldn't raise the $5,670 and we couldn't get another offer from anyone. In order to avoid the expense of a second probate sale, enable us to hold the property for a better market, and enable me, in the meantime, to receive the rents thereof, I arranged with T. O. Taylor to take the title in his own name, through Gaston, hold it as long as he could, sell it for the best price obtainable, apply the net proceeds on my indebtedness to him, and meanwhile take care of all my litigation."

The same explanation of the transfer of title to Gaston and Taylor appears in another affidavit, dated August 16, 1937, which the appellant admitted that she signed and verified. And she also identified her signature to a writing dated March 30, 1937, addressed to the tenants of the property in controversy, directing them to pay all future rents to the respondent James E. Brown.

The appellant, in her testimony, insisted that certain parts of the affidavit dated July 7, 1937, "were not on there" when she signed it, and that she did not swear to the truth of any part of it. As to the second affidavit, she said that none of the writing above her signature was on the paper when she signed it; she wrote her name, at Taylor's direction, on the blank page. She also declared that she was visiting in San Diego on August 16, 1937, the date of verification. But her statement in that regard was contradicted by Mary E. Warren, a notary public, who testified that the document was signed by the appellant in her presence as stated in the jurat.

William Gaston testified that he did not offer to buy the property described in the appellant's deed to him, and never had a deed to it in his possession. Asked if he signed and acknowledged a deed conveying the property to Taylor, he replied, "not knowingly." But he admitted that he signed "some document" in the office of Freda R. Paulson, a notary public, and that "it may have been" a deed. Miss Paulson, in support of her certificate of acknowledgment on the deed from Gaston to Taylor, said that she signed it when the two men came to her office and Gaston acknowledged his execution of the document.

There is voluminous evidence concerning the transactions between the appellant and Taylor during the time he acted as her attorney. Apparently the property comprising the

estate of Dr. Marlenee was much involved and its administration was carried on under many difficulties. But expressly omitting any determination upon the allegations respecting the alleged misrepresentations of Taylor to the appellant, the court found that she verified and caused to be filed a return of sale of the real property described in her complaint and petitioned for an order confirming its sale to Gaston. The appellant appeared and testified at the hearing upon that return, and later executed and acknowledged a deed in compliance with the order of confirmation. That deed, the findings continue, was recorded with the knowledge and consent of the appellant; she was familiar with all of the facts and circumstances surrounding the signing, acknowledging and recording of the deed, and by reason thereof, she is estopped in this action from contending that it was not signed or executed by her or that it is void. The court also found that the appellant "at all times" knew about the conveyance to Taylor O. Taylor.

According to other findings, on March 30, 1937, the respondents met the appellant for the purpose of adjusting the rentals of the property. At that time they, Mrs. Marlenee and Taylor notified the tenants that the Browns had become the owners and were entitled to collect the rents and she made no claim to the property. On the contrary, she voluntarily delivered possession of the property to them.

Upon these and many other findings in favor of the respondents, the court concluded that the appellant is not entitled to any relief. Her appeal is from the judgment based upon them.

In attacking this judgment, the appellant admits that the return of sale and the order confirming it are regular and valid, considering only the face of the record. But it is asserted that because there was, in fact, no sale to Gaston, the order purporting to confirm it is void. And although, ordinarily, in a collateral attack a fact such as that there was no sale to Gaston may not be shown by other evidence, because of the admissions in the answer concerning Gaston's part in the transaction and the introduction into evidence of his testimony without objection by the respondents, the order of the probate court must be read as including all of the circumstances now proved. Other contentions are that no title passed to Gaston because the appellant's deed to him was never delivered. And the appellant also

urges that there was no delivery of Gaston's deed to Taylor. All of her actions, she concludes, were induced by the fraud of Taylor, which was not discovered by her until shortly before the commencement of this action.

The respondents assert that they are bona fide purchasers for value and they rely upon the doctrine of estoppel. They concede that there was no sale to Gaston and they take no position upon the asserted fraud of Taylor. But they insist that because of the appellant's representations to the probate court and her conduct at the time Taylor sold the property to them, she is estopped to deny the validity of the probate sale and her deed to Gaston. Their position is that, having bought the property from Taylor, the record owner, for value and without notice of the appellant's claims, she has no rights in it.

The appellant's attack upon the judgment is based upon two main premises: (1) The respondents are not bona fide purchasers of the property and therefore took it subject to her right to set aside the conveyance for the fraud of Taylor, and (2) if the court correctly found that the respondents acquired the property for value and are not chargeable with notice of her rights, no title passed to them for any and all of the following reasons: (a) Since there was no sale to Gaston and consequently no subject matter for judicial determination, the probate court was without jurisdiction to make the order confirming the sale and her deed based upon it was a nullity; (b) If the order is valid, the deed to Gaston does not comply with its terms and is therefore void; and (c) Assuming that the deed complies with the provisions of the probate order, no title passed because the deed was never delivered to Gaston, nor was there any delivery to Taylor of the deed made by Gaston.

■ Considering the status of the respondents, as buyers, a bona fide purchaser is not chargeable with the fraud of his predecessors and takes a title purged of any anterior fraud affecting it and free from any equities existing between the original parties. (*Williams* v. *Borgwardt,* 119 Cal. 80 [51 P. 15]; *Morrow* v. *Graves,* 77 Cal. 218 [19 P. 489]; *Fish* v. *Benson,* 71 Cal. 428 [12 P. 454]; *Chapman* v. *Ostergard,* 73 Cal.App. 539 [238 P. 1081]; see 25 Cal.Jur., Vendor and Purchaser, sec. 268, pp. 820, 821, n. 3, 5, 6, 7.) ■ But the appellant contends that the purchasers may not have the

protection of this rule because she was in possession of the property, by her tenants, at the time they bought it, and they took title subject to her rights.

There is no contradiction of Mrs. Marlenee's testimony that after the date of the deed to Gaston signed by her and until March 27, 1937, she managed the property as she had done before. She called on some of the tenants from time to time and collected rent. Mrs. Marlenee said that this rent was collected for the estate. But these facts do not compel a finding that the respondents are not bona fide purchasers. There is no claim that they had notice of any rights claimed by the appellant, and the possession of land imports to an intending purchaser only such knowledge as would be gained by inquiry from the one having such possession. (*Porter* v. *Johnson,* 172 Cal. 456 [156 P. 1022].) ██ Had the respondents made inquiry of the tenants concerning the ownership of the property, undoubtedly they would have been referred to the appellant. But before the respondents completed their transaction with Taylor, they met the appellant. At that time, Mrs. Marlenee said: ''I came down to check the rents with you.'' The record also shows that she told Mr. Brown she ''was collecting the rent for Mr. Taylor.''

The appellant claims that her statement may reasonably be construed to mean that she was collecting the rent for Taylor who was her agent. But her other acts and conversation unquestionably show that she fully understood the respondents were then buying the property from Taylor. According to testimony in the record, after the conversation concerning rentals, Mrs. Marlenee went to the property with the respondent James Brown and introduced him to several of the tenants, saying that he ''was going to be the new purchaser'' of it. She also offered to sell him some of the furniture. At no time did she make any objections to the purchase by the respondents or assert that she had any interest in the property. And although Mrs. Marlenee denied these conversations, the finding of the trial court that the respondents are bona fide purchasers for value is supported by substantial evidence. As such purchasers, they took a title which, if voidable as between Taylor and the appellant, may not now be attacked for his asserted fraud.

A determination of the rights of the respective parties therefore depends primarily upon the title to the property at the time Taylor made his deed to the respondents. The

appellant urges that as there was in fact no probate sale to Gaston, hence no subject matter upon which the order of confirmation could operate, the order is void. And a deed based upon an invalid order of confirmation, she contends, is also void. In this connection, she calls to her aid the well established rule that a void deed cannot be the foundation of a good title and a bona fide purchaser for value acquires no rights under it. (*Trout* v. *Taylor,* 220 Cal. 652 [32 P.2d 968] ; *Bernhard* v. *Wall,* 184 Cal. 612 [194 P. 1040].)

It is elementary that in a collateral attack upon a judgment or an order of a probate court the recitals in the record may not be contradicted by evidence of facts different from those appearing upon its face. (*Texas Co.* v. *Bank of America etc. Assn.,* 5 Cal.2d 35, 41 [53 P.2d 127] ; *Kaufmann* v. *California Mining etc. Syn.,* 16 Cal.2d 90, 91 [104 P.2d 1038] ; *Estate of Keet,* 15 Cal.2d 328, 333 [100 P.2d 1045] ; and see cases collected in 15 Cal.Jur., Judgments, sec. 145, p. 59.) The case of *Townsend* v. *Tallant,* 33 Cal. 45 [91 Am. Dec. 617], which is relied upon by the appellant, recognizes this rule, for the court pointed out that the order there under attack contained no general statement concerning compliance with the requirements as to notice of a probate sale, but, on the contrary, ''shows affirmatively that the statute rule was violated.''

But Mrs. Marlenee calls attention to certain admissions in the pleadings as to there being no sale to Gaston. The complaint alleges that Gaston ''never at any time made any bid for said property or for any part thereof; he never at any time offered to purchase said property. . . . At no time did said Gaston have any intention of purchasing said property or any part thereof and never at any time did he purchase it or any part of it. At no time was there a sale of said property or any part thereof to said Gaston.'' These allegations are not denied, although in their answer the respondents declare that there was ''an actual sale'' to Gaston. But as the truth of the facts stated in the complaint is not controverted by this conclusion of the answer, according to the pleadings there was no sale to Gaston. (*Schoonover* v. *Birnbaum,* 148 Cal. 548, 551 [83 P. 999] ; *Easom* v. *General Mortgage Co.,* 101 Cal.App. 186, 190 [281 P. 514] ; *Gillons* v. *Turner Oil Co.,* 51 Cal.App. 139, 141 [196 P. 276].)

The appellant also points to evidence received without

objection, tending to show that Gaston did not make any bid for the property. Under such circumstances, says the appellant, upon the authority of *Hill* v. *City Cab etc. Co.,* 79 Cal. 188, 191 [21 P. 728]; *People* v. *Harrison,* 107 Cal. 541, 546 [40 P. 956]; *Akley* v. *Bassett,* 189 Cal. 625, 639 [209 P. 576], the order of confirmation must be read as affirmatively showing that fact. The doctrine of these cases, as recently stated in *Thompson* v. *Cook,* 20 Cal.2d 564, 569 [127 P.2d 909], is that ''although the judgment or order is valid on its face, if the party in favor of whom the judgment or order runs admits facts showing its invalidity, or, without objection on his part, evidence is admitted which clearly shows the existence of such facts, then it is the duty of the court to declare the judgment or order void.''

However, the appellant may not have the benefit of the exception to the rule confining a collateral attack to matters appearing on the face of the record for the respondents are bona fide purchasers. The title of such a purchaser may not be successfully questioned even though he admits by pleading, or fails to object to the admission in evidence of, facts tending to show that the judgment or order upon which it is based is invalid. (*Garrison* v. *Blanchard,* 127 Cal.App. 616, 621-623 [16 P.2d 273]; *Doyle* v. *Hampton,* 159 Cal. 729, 733, 734 [116 P. 39]; *Reeve* v. *Kennedy,* 43 Cal. 643, 650–653; and see *Follette* v. *Pacific L. & P. Corp.,* 189 Cal. 193, 205, 214 [208 P. 295, 23 A.L.R. 965]; *Newport* v. *Hatton,* 207 Cal. 515, 519, 520 [279 P. 134]; *Dunn* v. *Dunn,* 114 Cal. 210 [46 P. 5]; *Wood* v. *Roach,* 125 Cal.App. 631, 640 [14 P.2d 170].) The discovery of a defect not apparent in the record should not deprive the purchaser of rights he had earlier acquired in reliance upon the validity of the judgment roll, even though his subsequently acquired information prevents his denial, by way of answer or proof, of the existence of the defect.

The appellant's contention that her deed to Gaston does not comply with the order of confirmation is not supported by the record. The court confirmed a sale of the property for $10,000, less the amount of liens and encumbrances against it. The recorded deed to Gaston recites that it is made pursuant to the order ''and in consideration of the purchase price therein specified,'' which is stated as $5,670 although the parties stipulated that ''the total amount of unpaid and due taxes and assessments'' was $3,773. But

there is no contradiction between the amount of the consideration stated in the order and that specified in the deed. Apparently there were liens other than for taxes and assessments, or liens for taxes and assessments not due and payable, which were included in the amount stated in the order but not in the stipulation. For Mrs. Marlenee, speaking in her affidavit of the sale to Gaston, explained the consideration as being ''$10,000. gross, or $5,670. net, subject to liens and encumbrances amounting to more than $4,330.''

Another point urged by the appellant is that there was no delivery of either of the recorded deeds upon which the respondents rely for their chain of title. Without delivery, she insists, these deeds are ineffective for any purpose.

The lack of this vitalizing force, as it has been termed, of a conveyance may be asserted even against a bona fide purchaser who relied upon the grantee's possession of the instrument. (*Gould* v. *Wise*, 97 Cal. 532 [32 P. 576, 33 P. 323]; and see *Trout* v. *Taylor, supra*, p. 656.) But whether an instrument has been delivered is a question of intention. If a grantor intends that his deed shall be legally operative there is a delivery regardless of how the intention is manifested. (*Goodman* v. *Goodman*, 212 Cal. 730 [300 P. 449]; *Donahue* v. *Sweeny*, 171 Cal. 388 [153 P. 708]; *Follmer* v. *Rohrer*, 158 Cal. 755 [112 P. 544]; and see 4 Tiffany, Real Property [3d ed., 1939], sec. 1034, pp. 199, 200.) It has also been held that, although a deed in the hands of a grantee may be ineffective because unaccompanied by the intention of the grantor that it should be legally effective, it may subsequently be made operative by the grantor's recognition of the title as being in the grantee. (See cases collected in 4 Tiffany, Real Property [3rd ed. 1939], sec. 1036, p. 207, n. 4.) Although such recognition is usually termed a ''ratification'' of delivery, a more accurate statement would be that the recognition of title in the grantee is, in itself, a delivery by the grantor, that is, an expression of intention by him that the instrument, which has already passed into the grantee's hands, should effect the transfer of title. (See 4 Tiffany, Real Property [3rd ed. 1939], sec. 1036, p. 207.)

There is no evidence showing who had possession of the deed of July 1, 1935, to Gaston between that date, when, according to the testimony of Miss Paulson, Mrs. Marlenee signed it in her presence, and June 2, 1936, when it was

recorded. As a witness for the appellant, Gaston declared that he never had possession of it nor did he know of its existence. Concerning the other recorded instrument, Gaston did not directly deny that he signed a deed to Taylor. He admitted that he signed "some document" while in the office of Miss Paulson. He also said the document "may have been a deed," and that while he was there, one or more documents were handed back and forth between him and Mr. Taylor and Miss Paulson.

From this and the other evidence the trial court might have found that Gaston delivered his deed to Taylor at the time he signed and acknowledged it with the intention that it should convey title. And Mrs. Marlenee's admission that she "arranged with T. O. Taylor to take the title in his own name, through Gaston, hold it as long as he could," and then sell it, certainly imports a full intention that Gaston should obtain a merchantable title. Under these circumstances there was a legal delivery of her deed.

In denial of any such plan, the appellant insists that the affidavits and also the notice to tenants of March 30th received in evidence are inadmissible against her because they were obtained by Taylor for his benefit while acting as attorney for her. The confidential relationship of attorney and client, Mrs. Marlenee asserts, raises a presumption of lack of consideration and undue influence which was not rebutted (sec. 2235, Civ. Code). However, assuming that the statements of fact concerning the sale to Gaston are an "advantage" obtained by Taylor, as attorney, which may be questioned in an action between the client and a successor in title of the attorney, there is ample evidence in the record to support the implied finding of the trial court that they were not obtained by any undue influence. The same may be said of the notice to tenants. Certainly from the evidence before it, the trial court was entirely justified in concluding that the appellant was thoroughly conversant with every move made by Taylor in connection with the property and that she fully agreed upon the method used in conveying title to the respondents.

The appellant complains of the trial court's failure to determine the issue of the asserted fraud perpetrated upon her by Taylor. But it did find that if there was such fraud, the respondents had no knowledge of it and are not affected thereby. Another finding is that they are bona fide pur-

chasers, which compels a judgment in favor of the respondents, hence any determination of the issue of fraud as between the appellant and Taylor was immaterial and unnecessary. (*Russell* v. *Riley & Peterson,* 82 Cal.App. 728 [256 P. 557].)

It is also asserted that the trial judge erroneously admitted into evidence, over objection, a purported assignment of Mrs. Marlenee's distributive share in the estate of her deceased husband, and that she was not allowed to testify as to when, how, and for what purpose, she placed her signature upon it. As no finding was made concerning this instrument, and the court did not conclude that the respondents have any title because of it, the rulings have not prejudiced the appellant.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Carter, J., Traynor, J., and Peters, J., pro tem., concurred.

Appellant's petition for a rehearing was denied March 29, 1943.