Filed 7/13/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, etc., <br><br> Plaintiff, Cross-defendant and Respondent, <br><br> v. <br><br> ALAN PYLE et al., <br><br> Defendants, Cross-complainants and Appellants. | D071079 <br><br> (Super. Ct. No. PSC1400290) |

APPEAL from a judgment of the Superior Court of Riverside County, James T. Latting and Randall D. White, Judges. Affirmed.

Hennelly & Grossfeld and Ronald K. Giller for Defendants, Cross-complainants and Appellants.

Parker Ibrahim & Berg, John M. Sorich, Bryant Delgadillo and Mariel Gerlt-Ferraro for Plaintiff, Cross-defendant and Respondent.

In *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318 (review den. May 10, 2017) (*OC Interior*) another panel of this court concluded that

a void judgment does not pass title free of the lien purportedly cancelled by the void judgment; rather, "a void judgment in the chain of title has the effect of nullifying a subsequent transfer, including a transfer to a purported bona fide purchaser." (*Id.* at p. 1335.) In this case, the parties seek to avoid a similar result by arguing that a void default judgment essentially granted quiet title relief. We reject this argument because the void default judgment did not quiet title to the property.

FACTUAL AND PROCEDURAL BACKGROUND

*The Loan and Lender's Acquisition of the Property*

In 2004 Denise Saluto recorded a grant deed to real property located in Rancho Mirage, California (the Property). In 2005 Saluto obtained a $517,000 loan on the Property secured by a deed of trust (DOT). The DOT identified Saluto as the borrower and Long Beach Mortgage Company (LBMC) as the lender, beneficiary and trustee. LBMC later merged with Washington Mutual Bank (WaMu), which then became the beneficiary of the loan and DOT, as successor in interest to LBMC. In early 2007 Saluto defaulted on the loan.

Plaintiff Deutsche Bank National Trust Company, as trustee for Long Beach Mortgage Loan Trust 2005-WL3 (Deutsche Bank) acquired the Property in July 2007 at a trustee's sale for approximately $510,000, becoming the beneficiary of the loan and DOT. In August 2007 Deutsche Bank recorded its trustee's deed upon sale (the trustee's deed).

Deutsche Bank sought to gain possession of the Property through an unlawful detainer action, but Saluto filed for bankruptcy protection. On September 25, 2008, JPMorgan Chase Bank, N.A. (JPMorgan), acquired certain assets of WaMu from the

2

Federal Deposit Insurance Corporation, by and through a purchase and assumption agreement, including any interest WaMu had in the loan.

*The Saluto Action*

In February 2009 Saluto, acting in propria persona, sued Deutsche Bank and WaMu Bank, as successor to LBMC, to cancel, set aside and vacate the trustee's deed and cancel the DOT. Saluto alleged that she was the lawful owner of the Property free and clear of the DOT and sought to enjoin Deutsche Bank and WaMu from asserting any ownership or other legal rights or interest in the Property. Saluto did not allege a quiet title claim.

On December 15, 2009, the trial court entered a default judgment in favor of Saluto canceling and setting aside the trustee's deed and DOT, and enjoining Deutsche Bank and WAMu from asserting any interest in the Property. In March 2010 Saluto recorded the default judgment. That same month, JPMorgan learned of the default judgment when Saluto sought to refinance the Property.

In June 2010 Deutsche Bank and JPMorgan (as WaMu's successer in interest) filed a motion to set aside the default judgment under Code of Civil Procedure[1] section 473, subdivision (b). The trial court denied the motion as untimely. In December 2010 Deutsche Bank and JPMorgan filed a second motion to set aside the default judgment under section 473.5. The trial court granted the second motion, but this ruling was reversed on appeal. (*Saluto v. Deutsche Bank National Trust Company* (Apr. 24, 2012,

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

E053221) [nonpub. opn.] (*Saluto I*).) On July 27, 2012, the decision reinstating the default judgment became final based on the issuance of a remittitur.

In November 2013 Deutsche Bank and JPMorgan filed a third motion to set aside the default judgment based on extrinsic fraud, alleging that the proofs of service had been falsified and they were never served with the summons and complaint. After holding an evidentiary hearing, the trial court granted the motion finding that Saluto had filed false proofs of service and Deutsche Bank and JPMorgan had never been served with the summons and complaint in the Saluto action. On December 3, 2013, the order setting aside the default judgment was recorded.

*Saluto's Fraud and Sale of the Property*

Before Deutsche Bank purchased the property in July 2007, Saluto recorded a number of documents purporting to convey an interest in the property. Saluto recorded additional documents after Deutsche Bank purchased the property. While the Saluto action was pending, Saluto recorded more documents and sold the property to defendants. JPMorgan, its predecessors, or its agent did not authorize any of these documents. We summarize these interim events here.

In May 2006 a grant deed was recorded conveying title to the Property from Saluto to SNJ Properties, LLC (SNJ). In November 2006 another grant deed was recorded, wherein title to the Property was conveyed from SNJ to Atistar Mortgage Solutions, LLC (Atistar). In February 2007 Atistar conveyed title to the Property back to SNJ.

4

In July 2007 an "Affidavit & Notice of Dissolution of Trust Deed and Merger of Trust Deed into Title of Trust Deed Beneficiary" (Affidavit) was recorded, stating that SNJ transferred its interest in the Property to LBMC and WaMu. The Affidavit purported to dissolve the DOT, without Deutsche Bank's authorization. That same day, another grant deed was recorded, whereby SNJ purported to convey title to LBMC and WaMu.

In August 2007 Deutsche Bank recorded its trustee's deed. In July 2010 a recorded grant deed purported to convey title to the Property from Saluto to Lillie LTD (Lille). In September 2010 a grant deed was recorded whereby SNJ purported to convey title to the Property to Lillie.

In July 2012 a number of documents were recorded in the chain of title that were not authorized by Deutsche Bank. SNJ purported to convey title in the Property to Equalizer, LLC (Equalizer). Saluto then purportedly conveyed title from Lillie to Equalizer. Saluto also purportedly conveyed title in the Property to Equalizer. LBMC also purportedly conveyed title in the Property to Equalizer. Finally, Atistar purportedly conveyed title to Equalizer. In net effect, these transfers made it appear that SNJ, Altistar and LBMC had no interest in the property and that Equalizer had title to the property.

Defendants Cora Broadhurst and her husband, Alan Pyle, became interested in the Property when it was advertised for sale. Pyle has an MBA and experience in the financial industry. Broadhurst is a licensed mortgage broker and realtor, although her licenses may not be currently active. In September 2012 Broadhurst and Pyle entered into a California residential purchase agreement and joint escrow instructions (the

Purchase Agreement) with Equalizer under which Equalizer agreed to sell the Property to Broadhurst and Pyle for $315,000. Under the Purchase Agreement, Equalizer agreed to disclose all matters known to it affecting title. Additionally, the real estate transfer disclosure statement required Equalizer, as the seller, to disclose an awareness of "'[a]ny lawsuits by or against the Seller threatening to or affecting this real property, including any lawsuits alleging a defect or deficiency in this real property.' " Equalizer responded to this disclosure obligation marking the box "no." At this time, however, Deutsche Bank had filed two motions to set aside the default judgment in the Saluto action. Although the second motion was successful, the ruling was reversed on appeal in April 2012. Thus, the Saluto action was still ongoing when Broadhurst and Pyle purchased the property.

In October 2012 a grant deed was recorded, wherein Equalizer purportedly conveyed title in the Property to Broadhurst and Pyle. Saluto executed the grant deed as a "Member" of Equalizer. Broadhurst and Pyle obtained a loan from defendant FirstBank in the approximate amount of $225,500 to purchase the Property.[2] In November 2013, a deed of trust (2013 DOT) was recorded which purported to encumber the Property in favor of FirstBank. The borrowers under the 2013 DOT are Broadhurst and Pyle. Deutsche Bank did not authorize, consent or ratify the 2013 DOT.

*The Instant Action*

Deutsche Bank filed this action against defendants for: quiet title, cancellation of instruments, declaratory and injunctive relief, slander of title, and forcible entry and

---

[2]    We collectively refer to Broadhurst, Pyle and FirstBank as defendants.

detainer. Defendants filed a cross-complaint seeking, among other things, to quiet title to the Property in their favor. The parties filed cross-motions for summary judgment or, alternatively, summary adjudication of issues seeking judgment as to all causes of action in Deutsche Bank's complaint and the quiet title cross-complaint. Among other things, Deutsche Bank argued that defendants' claim for quiet title and affirmative defense of bona fide purchaser or encumbrancer failed as a matter of law.

The trial court denied defendants' motion and granted Deutsche Bank's motion concluding that defendants did not qualify as bona fide purchasers as a matter of law based on the void default judgment. The trial court entered a judgment in favor of Deutsche Bank. Defendants' timely appealed.

## DISCUSSION

### I. *STANDARD OF REVIEW*

Summary judgment is appropriate where "the action has no merit or [] there is no defense to the action or proceeding." (§ 437c, subd. (a)(1).) A party seeking summary judgment bears the initial burden of making a prima facie showing that no triable issue of material fact exists. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) If this burden is met, the party opposing the motion bears the burden of showing the existence of disputed facts. (*Ibid.*) We independently review the granting of summary judgment to ascertain whether there is a triable issue of material fact justifying reinstatement of the action. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) The trial court's ruling to grant a summary judgment should be

7

upheld only if no triable issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. (*Aguilar*, at p. 850.)

## II. *ANALYSIS*

### A. *Impact of Void Default Judgment*

In granting Deutsche Bank's motion, the trial court recognized that all claims alleged by the parties hinged on: (1) whether defendants were entitled to bona fide purchaser or encumbrancer status, and (2) the impact of the void default judgment in the chain of title. On appeal, defendants disagree with the trial court's ultimate conclusion on the above two questions, but essentially concede that resolution of these questions resolve all claims alleged by the parties. Defendants contend we should reverse the trial court's ruling granting summary judgment in favor of Deutsche Bank and order that summary judgment be granted in their favor.

Relying on *Garrison v. Blanchard* (1932) 127 Cal.App. 616 (*Garrison*), defendants assert that a bona fide purchaser of real property is protected from a title challenge where the purchaser's title is alleged to be invalid because of a void judgment in the chain of title. They claim other courts have come to the same conclusion, citing, among other cases, *Newport v. Hatton* (1924) 195 Cal. 132 (*Newport*) and *Marlenee v. Brown* (1943) 21 Ca1.2d 668 (*Marlenee*). They also claim that the quiet title statutes effectively codified the rule in these cases.

Deutsche Bank asserts that the void default judgment was a nullity that had no effect, even as against a subsequent bona fide purchaser or encumbrancer. It contends that defendants improperly relied on authority pertaining to quiet title judgments which is

8

inapplicable to the void default judgment at issue because the Saluto action was not a quiet title case. Because the void default judgment is a nullity, the trial court properly concluded that defendants are not bona fide purchasers as a matter of law. In the alternative, Deutsche Bank asserts defendants cannot satisfy the requirements for bona fide status. Finally, they claim the equities favor it, over defendants.

As a preliminary matter, the elements of a bona fide purchaser are payment of value, in good faith, and without actual or constructive notice of another's rights. (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251.) "[A] bona fide purchaser for value who acquires his interest in real property without notice of another's asserted rights in the property takes the property free of such unknown rights." (*Hochstein v. Romero* (1990) 219 Cal.App.3d 447, 451.)

In *OC Interior Services, supra*, 7 Cal.App.5th 1318, another panel of this court addressed the impact of a void judgment in the chain of title.[3] (*Id.* at p. 1335.) For purposes of analysis, the *OC Interior* court assumed that the property purchaser qualified as a bona fide purchaser for value. (*Id.* at p. 1331.) Although the facts in *OC Interior* were much simpler than the instant action, the essential facts are very similar—a property owner/borrower, acting in propria persona, obtained a default judgment against the lender/trust deed holder cancelling the trust deed holder's interest in the property. After the property owner sold the property, the trust deed holder learned of the default

---

[3]    We allowed the parties to file supplemental briefs addressing *OC Interior*, *supra*, 7 Cal.App.5th 1318. The parties have done so, and we have considered these submissions.

9

judgment and successfully set it aside as void.[4]  The *OC Interior* court concluded that a void judgment does not pass title free of the lien purportedly cancelled by the void judgment; rather, "a void judgment in the chain of title has the effect of nullifying a subsequent transfer, including a transfer to a purported bona fide purchaser."  (*Id.* at p. 1335.)  We agree.

Here, when Deutsche Bank acquired the Property it recorded the trustee's deed. The trustee's deed showing Deutsche Bank's interest in the Property is in the chain of title, a fact defendants do not dispute.  Saluto obtained a default judgment purportedly cancelling the trustee's deed.  She recorded the default judgment in March 2010. Although the default judgment had the legal effect of eliminating Deutsche Bank's interest in the Property, the trustee's deed remained in the chain of title.  Deutsche Bank

---

[4]     In *OC Interior* a property owner obtained a $2 million loan, secured by a first deed of trust (First DOT) on his property.  (*OC Interior*, *supra*, 7 Cal.App.5th at p. 1323.)  The original lender assigned the note and First DOT to another creditor, a securitization trust. (*Ibid.*)  The property owner defaulted on the loan and, while negotiating with the loan servicer for a forbearance agreement, sued the original lender to, among other things, cancel the First DOT.  (*Ibid.*)  After the property owner recorded a default judgment in his favor, the original lender moved to set aside the default judgment on the ground it never received notice of the action because the property owner served the complaint at its former address.  (*Id.* at pp. 1323-1324.)

In the meantime, the property owner sold the property to purchaser for half of its appraised value, with purchaser obtaining title insurance in an amount over the actual purchase price.  (*OC Interior*, *supra*, 7 Cal.App.5th at p. 1324.)  The purchaser also obtained a special addendum to the purchase agreement, in which the property owner represented that he had not engaged in fraud.  (*Id.* at p. 1336.)  The original lender learned of the default judgment and successfully moved to set it aside.  (*Id.* at p. 1324.) The trustee under the First DOT recorded a notice of trustee sale.  (*Ibid.*)  The purchaser then sued to enjoin the foreclosure.  (*Ibid.*)  The trial court granted summary judgment in favor of the purchaser on the ground that the purchaser qualified as a bona fide purchaser of the property, taking the property free of the First DOT.  (*Id.* at pp. 1324-1325.)  The trustee appealed.

filed its first motion to set aside the default judgment in June 2010. Despite a number of missteps, in November 2013 Deutsche Bank obtained an order setting aside the default judgment as void on the ground it had never been served with the summons and complaint in the Saluto action. As the *OC Interior* court correctly found, a void judgment is " 'a nullity—past, present and future.' " (*OC Interior*, *supra*, 7 Cal.App.5th at p. 1331.) Thus, the order voiding the default judgment, in legal effect, eliminated the default judgment from the record. This left Deutsche Bank's trustee's deed in defendants' chain of title. In end result, defendants are not bona fide purchasers as a matter of law because they had record notice of Deutsche Bank's trustee's deed.

In reaching its conclusion, the *OC Interior* court addressed most of the case law cited by defendants, including *Garrison*, *supra*, 127 Cal.App. 616, *Newport*, *supra*, 195 Cal. 132 and *Marlenee*, *supra*, 21 Ca1.2d 668. Of particular interest is the court's extensive discussion of *Garrison*, a case relied on by Deutsche Bank and defendants.[5]

---

[5]    In their supplemental brief defendants argue they are entitled to bona fide status protection because this action constitutes a collateral attack by Deutsche Bank on Saluto's default judgment which appeared valid on the face of the record. Defendants are mistaken. The instant action does not challenge the default judgment. Saluto did not appeal the ruling declaring the default judgment void and defendants do not dispute that the default judgment is void; rather, they contest the legal effect of the void default judgment in the chain of title.

Defendants also argue that the fact pattern in *Garrison* "is nearly identical to the fact pattern here" because they did not receive notice of the action in which the default judgment was set aside. We disagree. *Garrison* addressed three separate actions, two of which sought to *quiet title*. (*Garrison*, *supra*, 127 Cal.App. at p. 618.) In *Garrison* the final purchaser of the property did not receive notice of the order vacating a default judgment or a quiet title judgment even though the entity that obtained the order vacating the default judgment and the quiet title judgment knew of the purchaser's interest in the property. (*Id.* at pp. 619, 621.) As the *OC Interior* court explained, *Garrison* came to the

11

(*OC Interior*, *supra*, 7 Cal.App.5th at pp. 1333-1335.)  For brevity's sake, it is not necessary of us to reiterate this discussion as we agree with the ultimate conclusion in *OC Interior* that a void judgment in the chain of title does not pass title free of the lien purportedly cancelled by the void judgment.  Defendants contend that the quiet title statutes should apply because Saluto obtained quiet title relief.  Specifically, defendants rely on section 764.060 to argue "where a party purchases real property for value in reliance on a quiet title judgment without notice of any defects or irregularities in the judgment or the case in which the judgment was entered, the party's rights cannot be impaired even if the quiet title judgment is later successfully directly or collaterally attacked."  The *OC Interior* court touched on a similar argument.  (See *OC Interior* at p. 1334 & fn. 6.)  We expand on this discussion, addressing the difference between quiet title relief and cancellation of instruments, to show that defendants cannot rely on the quiet title statutes.

Civil Code section 3412 provides a "written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."  To obtain cancellation under this section, a plaintiff must allege the instrument is "void or voidable" and would cause "serious

correct conclusion in favor of the purchaser noting that the under the current quiet title statutory scheme a judgment is not effective against a person with a recorded claim at the time the judgment is recorded who is not made a party to the action. (*OC Interior*, *supra*, 7 Cal.App.5th at p. 1334, citing § 764.045.) As we discuss *post*, the Saluto action did not seek quiet title relief and defendants cannot rely on protections afforded under the quiet title statutory scheme.

12

injury" if not canceled. (*Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 818-819.) Cancellation of an instrument is essentially a request for rescission of the instrument. (*Bank of America v. Greenbach* (1950) 98 Cal.App.2d 220, 228.) The effect of a decree cancelling an instrument is to place the parties where they were before the instrument was made, as if it had never been made. (*Id.* at p. 238.)

An action to cancel an instrument is distinct from an action to quiet title. (*Hyatt v. Colkins* (1917) 174 Cal. 580, 581.) Where a complaint seeks to quiet title to real property and cancel an instrument and both claims are based on the same facts, it is said that the cancellation claim is incidental to the claim to quiet title such that the action asserts only one claim. (*Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 833.) Stated differently, a complaint alleging facts authorizing relief both to quiet title and to cancel an instrument may state but one cause of action, "this does not mean that the cause of action is necessarily one to quiet title. Quieting title is the relief granted once a court determines that title belongs in plaintiff. In determining that question, where a contract exists between the parties, the court must first find something wrong with that contract. In other words, in such a case, the plaintiff must show he has a substantive right to relief before he can be granted any relief at all. Plaintiff must show a right to rescind before he can be granted the right to quiet his title." (*Leeper v. Beltrami* (1959) 53 Cal.2d 195, 216.)

The purpose of a quiet title action "is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he [or she] may be entitled to." (*Peterson v. Gibbs*

13

(1905) 147 Cal. 1, 5.) Actions to quiet title are governed by section 761.010 et seq. The quiet title plaintiff must file a verified complaint including a description of the property, the basis for the plaintiff's claim of title, the adverse claims the plaintiff seeks to adjudicate, the date as of which the plaintiff seeks to adjudicate those claims, and a prayer for the determination of the plaintiff's title against the adverse claims. (§ 761.020.) A quiet title plaintiff must name as defendants "the persons having adverse claims that are of record or known to the plaintiff or reasonably apparent from an inspection of the property." (§ 762.060, subd. (b).) Any person who has a claim to the property may appear as a defendant, whether or not they are named in the complaint. (§ 762.050.) "Immediately upon commencement of the action" a quiet title plaintiff must record a lis pendens. (§ 761.010, subd. (b).)

Before entering a judgment quieting title, "The court shall examine into and determine the plaintiff's title against the claims of all the defendants. *The court shall not enter judgment by default* but shall in all cases require evidence of plaintiff's title and hear such evidence as may be offered respecting the claims of any of the defendants, other than claims the validity of which is admitted by the plaintiff in the complaint. The court shall render judgment in accordance with the evidence and the law." (§ 764.010, italics added.) "[U]nlike the ordinary default prove-up, in which a defendant has no right to participate [citation], before entering any judgment on a quiet title cause of action the court must 'in all cases' 'hear such evidence as may be offered respecting the claims of any of the defendants.' " (*Harbour Vista, LLC v. HSBC Mortgage Services Inc.* (2011) 201 Cal.App.4th 1496, 1502, italics omitted.)

14

A quiet title judgment does not bind a nonparty whose interest was of record prior to the filing of the lis pendens or, if no lis pendens was filed, at the time the judgment was recorded. (§ 764.045, subd. (a).) Nor does the judgment bind a nonparty whose interest was actually known to the plaintiff at the time of the lis pendens or, if no lis pendens was filed, "at the time the judgment was entered. Nothing in this subdivision shall be construed to impair the rights of a bona fide purchaser or encumbrancer for value dealing with the plaintiff or the plaintiff's successors in interest." (§ 764.045, subd. (b).) Where a party purchases real property for value in reliance on a quiet title judgment without notice of any defects or irregularities in the judgment or the case in which the judgment was entered, the party's rights cannot be impaired even if the quiet title judgment is later successfully directly or collaterally attacked. (§ 764.060.) The purpose of this statute is to enhance the marketability of property as to which a quiet title decree has been rendered by relegating the plaintiff to a damage remedy. (Cal. Law Revision Com. com., 17A1 West's Ann. Code Civ. Proc. (2015 ed.) foll. § 764.060, p. 453.)

Here, Saluto did not allege a quiet title claim. Rather, she claimed that Deutsche Bank and WaMu had wrongfully foreclosed on the Property and she was entitled to cancellation of the trust deed because she had properly rescinded her loans under the Truth in Lending Act (15 U.S.C. §§ 1601-1666) by mailing a notice of rescission and tendering the original principal amount of the loans. Saluto sought an injunction restraining Deutsche Bank and WaMu from asserting any ownership or other legal rights or interest in the Property.

In her ex parte application for a default judgment against Deutsche Bank and WaMu, Saluto specifically notified the court: "THIS IS NOT A QUIET TITLE CASE AND DOES NOT REQUIRE A COURT HEARING." Saluto obtained a default judgment canceling and voiding the foreclosure and trustee's deed, and permanently enjoining Deutsche Bank and WaMu from asserting any ownership or lien interest in the Property. The default judgment did not quiet title.[6]

Defendants' incorrectly claim that Saluto "obtained quiet title relief" and "all requirements of section 764.060 were satisfied." Accordingly, even assuming defendants qualify as bona fide purchasers, defendants cannot benefit from section 764.060, which provides "[t]he relief granted in an action or proceeding directly or collaterally attacking the judgment in the action, whether based on lack of actual notice to a party or otherwise, shall not impair the rights of a purchaser or encumbrancer for value of the property acting in reliance on the judgment without knowledge of any defects or irregularities in the judgment or the proceedings." Without citing any authority, the Miller & Starr treatise comments that the provisions of section 764.060 "may serve as a useful summary of what the effect of a judgment *ought* to be in actions other than quiet title proceedings, even if the existing case law is somewhat confused and inconsistent for such other actions." (4 Miller & Starr, Cal. Real Estate (4th ed. 2016) § 10-147, p. 10-508.) We decline to apply

---

[6] The appellate court in *Saluto I* incorrectly stated that Saluto's complaint included a claim to quiet title. This mistake was of no consequence as the appellate court did not rely on the quiet title statutes in deciding the matter before it.

16

the rule of section 764.060 to a non-quiet title judgment as such judgments lack the statutory protections governing quiet title actions.

Finally, both parties assert the equities support their position. We conclude that the equities favor Deutsche Bank. After Saluto defaulted on her loan Deutsche Bank obtained a trustee's deed and became the owner of the Property after paying approximately $510,000 at a trustee's sale for the Property. Deutsche Bank had no knowledge of Saluto's subsequent fraud. In contrast, before the sale transaction with Equalizer closed, Broadhurst received a copy of the default judgment and discussed it with Pyle. The default judgment clearly indicated that Saluto was acting in propria persona. After reading the default judgment Broadhurst was "astonish[ed]" to see that it set aside Saluto's mortgage. Broadhurst was aware that Equalizer had acquired its title from Saluto. Broadhurst and Pyle paid Equalizer $315,000 for the Property, about $195,000 less than Deutsche Bank paid at the trustee's sale. The grant deed Broadhurst and Pyle obtained from Equalizer revealed that Saluto was a member of Equalizer. Broadhurst asked the title insurer to explain the default judgment and was told that because the default judgment had been entered about three years earlier they could rely on it and the title insurer was "prepared to issue title insurance."

Additionally, documents in the chain of title revealed numerous transfers of the Property. For example, in July 2007 a recorded Affidavit purported to dissolve Deutsche Bank's DOT. The following month, however, Deutsche Bank recorded its trustee's deed. After Saluto obtained the void default judgment in December 2009, Saluto purportedly transferred her interest in the property to Lillie in July 2010. In July 2012, Saluto and

17

two entities with Saluto as a managing member or partner (SNJ and Lillie), purportedly transferred their interest in the Property to Equalizer, an entity also controlled by Saluto. Based on the totality of the circumstances, Broadhurst was on inquiry notice of possible title defects.

Defendants' remedy is through their title insurer. The title insurer made a business decision to issue title insurance knowing Saluto prosecuted her action and obtained the default judgment acting in propria persona, Equalizer had acquired its title from Saluto, Saluto was a member of Equalizer, and Equalizer sold the Property to Broadhurst and Pyle. The default judgment, on its face, did not grant quiet title relief. The title insurer could have reviewed the court file for the Saluto action and easily ascertained that Deutsche Bank was attempting to have the default judgment set aside and the litigation was on going. Instead, the title insurer apparently relied on the age of the default judgment in deciding to issue title insurance. A void judgment, however, can be set aside at any time. (§ 473, subd. (d); *Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830 ["[a] void judgment can be attacked at any time by a motion under Code of Civil Procedure section 473, subdivision (d)"].)

Finally, defendants fault Deutsche Bank for not filing a lis pendens on the Property. This argument ignores that the default judgment enjoined Deutsche Bank from asserting any ownership or lien interest in the Property. Deutsche Bank could not file a lis pendens. Had Deutsche Bank done so, Saluto would have immediately moved to expunge it based on the default judgment eliminating Deutsche Bank's interest in the property. (§ 405.32 [A lis pendens may be expunged if "the claimant has not established

18

by a preponderance of the evidence the probable validity of the real property claim."].)

Defendants also claim they had no obligation to check the court records to determine the status of the Saluto action. This argument ignores that the default judgment was recorded and provided notice of the Saluto action. (Gov. Code, § 27282, subd. (a)(1); *Strutt v. Ontario Sav. & Loan Assn.* (1970) 11 Cal.App.3d 547, 555 ["judgments directly affecting the title to real property do not constitute constructive notice unless recorded in the office of the recorder"].) Thus, defendants were on inquiry notice of what a review of the Saluto action would have revealed. (*First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443 ["A person generally has 'notice' of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact."].) The " 'recording laws were not enacted to protect those whose ignorance of the title is deliberate and intentional.' " (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1252.)

B. *Impact of the Void Judgment on the Causes of Action Alleged by the Parties*

Defendants rely on the void default judgment to support their argument that the trial court erroneously granted summary judgment in favor of Deutsche Bank because Deutsche Bank cannot prevail on the claims alleged in its complaint. As addressed above, the void default judgment does not support defendants' claim to title.

As to Deutsche Bank's claim for slander of title, defendants make the additional argument that Deutsche Bank cannot prevail on this claim because Deutsche Bank failed to present evidence showing defendants' made the statement disparaging Deutsche Bank's

19

title without malice.[7]  Nonetheless, should we reject their primary argument regarding the validity of their title, defendants request that the ruling in favor of Deutsche Bank on the slander of title cause of action be affirmed because the court awarded no damages against defendants.  We affirm summary adjudication of this claim, as requested by defendants, without addressing the merits of their argument.

In summary, the judgment in favor of Deutsche Bank is affirmed.  This renders moot the remaining arguments regarding defendants' motion and the court's ruling on evidentiary objections.

DISPOSITION

The judgment is affirmed.  Deutsch Bank is entitled to its costs on appeal.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

_____

[7]     The elements of a cause of action for slander of title are (1) a publication, which is (2) without privilege or justification and thus with express or implied malice, (3) false, either knowingly so or made without regard to its truthfulness and (4) causes pecuniary loss.  (*Howard v. Schaniel* (1980) 113 Cal.App.3d 256, 263-264.)